## In the Court of Common Pleas of Schuylkill County.

COMMONWEALTH ex. rel. D. B. ALTHOUSE, PRESTON MIL-
    LER and W. W. JONES, Commissioners, &c., vs. D. P.
    THOMPSON, treasurer and collector of Porter township.

---

The appropriate functions of a mandamus are the enforcement of duties to the public, by officers and others who either neglect or refuse to perform them.

An act of the Legislature must violate some prohibition, either expressly or necessarily implied, either of the Federal or State Constitution, before it can be pronounced by the judicial department unconstitutional and void. The court cannot pronounce a tax unconstitutional on the mere ground of injustice and inequality.

The Legislature may vary the nature and extent of remedies, as well as the times and modes in which these remedies may be pursued, but the abolition of all remedies by a law operating in *praesenti* is the impairing of the obligation of the contract, and therefore unconstitutional.

Alternative Mandamus.

Opinion delivered March 14, 1875, by
PERSHING, P. J. By an Act of Assembly passed the seventh of

April, 1869, the relators were appointed commissioners to lay out a State road in the counties of Schuylkill and Dauphin. This road was to be constructed at the expense of the individuals and companies owning or occupying lands through or contiguous or adjacent to said road, and this to embrace in Porter township, Schuylkill county, all the lands north of said road up to the north line of said township. This is followed by a a proviso that the parties at whose expense the road is to be constructed, shall not be compelled to contribute for that purpose any greater or other sum than the road taxes which may be assessed at the rate and in common with the lands and property of others, with an appropriation of all the road taxes thereafter to be assessed upon the lands mentioned, together with such other sums as might be advanced by said individuals or companies to the opening and construction of the road, by the supervisors of the respective townships. See P. L. 738.

A supplement to this act, passed February 27, 1872, (P. L. 171), enlarged the powers of the Commissioners. They were empowered, instead of the township supervisors, to take charge of the construction of this State road, and to let the same out on contract, in sections. For a proper understanding of the present controversy it seems necessary to quote the second section of this supplement at length. It is in these words:—"The said Commissioners, or a majority of them, shall receive from the township road tax collectors and county treasurers, all taxes already in, or hereafter to come into their hands, and any money advances that may be made by individuals or companies, which are applicable under the said act to the opening and construction of said road, and shall use and pay out the same in repaying any expenses incurred, or advances or outlays heretofore made by any individual or company, for the purpose and towards making the road under their contracts therefor aforesaid and otherwise; and any individual or company liable to the expense thereof under said act, who has heretofore advanced or expended any sums, or shall hereafter advance to said Commissioners, or a majority of them, any sums to and for the opening and construction of the road, or of any portion or piece thereof, shall be credited with the same, and shall be entitled to and shall receive from the Commissioners, or a majority of them, a certificate of the sums so advanced or expended; and each and all of such sums shall be repaid on each such certificate, with interest, through and by means of all the road taxes which are in and by said act directed to be appropriated and applied to the opening and construction of said State road, either by said Commissioners receiving and paying over road taxes on such certificates, or by the road supervisors or collectors of road taxes in the respective townships, crediting the taxes as they are hereby required to do from time to time, and as requested by any individual or company, whose lands are liable on any such certificate or certificates,

or by both such methods, until all such certificates are paid off and the road is completed.''

In their suggestion filed the commissioners set forth the act of 1869 and the supplement passed in 1872; their acceptance of the duties imposed and their compliance with the provisions of said acts of Assembly. They state that ''for the purpose of opening and constructing said road and paying the contractors therefor they loaned a large amount of money on certificates, or obtained an advance of large amounts of money for the purpose of making and opening said road,'' for which they ''gave certificates of the sums so advanced according to the second section of the supplementary acts, and that there is now outstanding and unpaid a large number of said certificates which amount to $25,000, or thereabouts, which certificates are now due and unpaid.''

The relators further represent that David P. Thompson was the collector of road taxes in the years 1872 and 1873, for the township of Porter, and that during that time he collected in cash a large amount of taxes, which under the acts of Assembly aforesaid, were applicable to the payment of the before-mentioned certificates, which taxes were collected by said D. P. Thompson, upon and from the lands and other property which were appropriated for the opening of said State road, and subject to the redemption of said certificates; that prior to the time of the filing of the suggestion in this case, the relators demanded of said D. P. Thompson the payment to them of all the moneys collected by him from taxes assessed on the lands and other property appropriated to the making of said State road, and that said Thompson, in violation of his duty, has neglected and positively refused to pay over the same to the relators, and that for this they, the relators, have no specific legal remedy.

The appropriate functions of a mandamus are the enforcement of duties to the public by officers and others who either neglect or refuse to perform them. 1 Wright, 279. Where a clear and specific duty is positively required by law of any officer, and the duty is of a ministerial nature involving no element of discretion, and no exercise of official judgment, mandamus is the appropriate remedy to compel its performance, in the absence of any other adequate and specific means of relief, and the jurisdiction is liberally exercised in all such cases: High's Extraordinary Legal Remedies, 26, where many cases are cited. The existence of a remedy by an action on the case against a public officer for neglect of official duty, does not supersede the remedy by mandamus, since such action can only afford pecuniary compensation and cannot compel the performance of the specific duty required, Ib. 19. Applying these general principles and taking into consideration the fact that the relators are officers, deriving their powers directly from the Legislature, we think they have a right to the alternative writ of mandamus issued at their sugges-

tion, and that they have no other specific legal remedy. · This answers the first and second divisions of the return and answer of the defendant.

The respondent, in his return, alleges that the acts of Assembly of 1869 and 1872, whence the relators derive their powers, are unconstitutional and void. A number of reasons are assigned in support of this position. A discussion of this question would extend this opinion to an unreasonable length. Taxation has taken almost every shape, and within comparatively a few years many important cases on this subject have been determined by the Supreme Court of the State. We will content ourselves by a brief reference to a very few of the authorities.

An act of the Legislature must clearly transcend the limits of the power confided to that department of the government, or more properly speaking, it must violate some prohibition either expressly or necessarily implied, either of the Federal or State Constitution, before it can be pronounced by the judicial department unconstitutional and void ; Durach's Appeal, 12 P. F. S., 491. The court cannot pronounce a tax unconstitutional on the mere ground of injustice and inequality ; Weber v. Reinhard et al., 23 P. F. S., 370. To make an act of the Legislature void, it must be clearly not an exercise of Legislative authority, or else be forbidden so plainly as to leave the case free from all doubt ; Sharpless v. Mayor, &c., 9 H. 147. It must be remembered that a great deal of vicious legislation may be had within the boundaries of the Constitution. The courts often find themselves unable to set aside acts of the Assembly on constitutional grounds, which they would be glad to repeal if they had a constitutional veto. Commonwealth v. Com. of Allegheny Co., 8 Casey, 218. Every presumption is to be made in favor of the right of taxation. If the case is within the principle of taxation, the proportion of contribution and other details are within the discretion of the taxing power, Hammett v. Philadelphia 15 P. F. S. 146. An act of the Pennsylvania Legislature was held to be unwise and unjust, but because it came within no express prohibition of the Constitution it was sustained. Satterlee v. Matthewson, 2 Peters, 180. In short, a reference to the highest authorities will show, that the legislation out of which the present controversy arises may be "unwise," "unjust," "unequal," "oppressive," "vicious," and still be "within the boundaries of the Constitution."

It might not be proper for us to pronounce upon this legislation in any other way than judicially ; and looking at it in that way, we cannot, "without doubt or hesitation," (9 H. *supra*) pronounce it unconstitutional.

Proceeding with the answer of the respondent, he admits that there is in his hands a balance of $1831, but denies that it is applicable to the making of said State road, and avers that the same is required to repair

the roads and bridges of Porter township; that the roads of said township are in a very bad condition, and that all the money of the township is required for their immediate repair.

In a proceeding of this kind it is an established rule that every allegation of a return must be direct, and must be stated in the most unqualified manner, not inferrentially or argumentatively, but with certainty and plainness, 8 Cas. 218, 1 Wr. 237. The respondent admits he was the collector of road taxes for the years mentioned in the suggestion. Did no taxes come into his hands, which, by the acts of 1869 and 1872, were especially appropriated to this road? If not, he should have said so in plain terms. That the money in his hands is not applicable to this State road may be a mere inference of his own, as he fails to furnish any facts which led to his conclusion. We must hold this part of respondent's return to be uncertain and evasive.

In the fourteenth paragraph of his answer, the respondent states that the said $1831 is deposited in the Government National Bank of Pottsville, and is claimed by C. Tower, in the case of the Commonwealth ex rel. C. Tower v. D. P. Thompson, treasurer and collector of Porter township (the defendant,) and the Government National Bank of Pottsville; that a mandamus issued to No. 523, March Term, 1873, which is now pending; that said C. Tower claimed the money in that proceeding under the authority of the present relators, and that until said mandamus is removed, the court cannot award a mandamus as asked for by the relators in this proceeding.

It will be seen by referring to the second section of the supplemental act of 1872, that the only duty imposed on the defendant as collector of road taxes, in relation to the certificates which the commissioners were authorized to issue, was that of crediting the road taxes on such certificates. The alternative mandamus to No. 523, March Term, 1873, was to compel the collector, not to credit taxes, but to pay money on certificates held by C. Tower, Esq., who was the relator in that case. The court held that this was outside of the collector's authority, the power to pay money on such certificates being conferred on the Commissioners, and gave judgment for the respondent. We regard that proceeding as at an end. If it were not, its pendency would not operate as a plea in abatement as this case now stands. Pendency of another suit for the same purpose would be a good plea in abatement for mandamus, but defendant cannot rely on that plea, and at the same time ask judgment of the court on the merits of the controversy by setting up the facts on which he relies, as showing that upon the merits a peremptory writ should not issue. By adopting this course, he submits his cause to the judgment of the tribunal and waives his plea in abatement. High on Mandamus, 322.

We think it unnecessary to refer in detail to the other matters contained in the answer of respondent. In all that is said about the extensive powers entrusted to the relators as Commissioners, and the want of proper guards around the legislation to which they owe their legal existence, we agree. How far the official acts of officers of this kind are exempt from the control of the usual judicial tribunal may be seen from the case of the Phœnixville Road, 2 P. F. S., 106. In that case the act of Assembly was alleged to be "a fraud upon the community," and Judge Chapman, in his opinion, declared that "errors were committed by the Commissioners which imperatively called for the interference of the Court." The Supreme Court held "that there is no act conferring a general power to revise the proceedings of the Commissioners appointed to lay out State roads, under special acts of Assembly. Deriving their powers from the special law, these Commissioners are wholly governed by its provisions."

The law in this case directs the relators to receive from the defendant, as tax collector, certain taxes. The duty on the part of the respondent to pay them is purely ministerial, and we can find no sufficient reason why he should not perform it, unless he is exonerated by the Act of Assembly passed June 9th, 1874. This act repeals the third section of the act of 7 April, 1869, and the whole of the supplemental act of 1872. It leaves in force the first and second sections of the original act by which the relators were appointed Commissioners for laying out this State road, but strips them of the power to make contacts for the making of the road, issuing certificates of indebtedness, and receiving from the tax collectors and county treasurer certain taxes to be used in the payment of certificates issued by them. The effect of this repealing statute upon the present legislation was argued at length. It was passed after the present proceeding was instituted in Court, and, of course, after the Commissioners had issued the certificates mentioned in their suggestion. If the repeal has the effect claimed for it by the respondent, then the holders of these certificates have no remedy by which they can enforce their payment. We have had little difficulty in coming to the conclusion that the repealing Act of June 9, 1874, cannot affect certificates issued prior to that date. Where one statute is repealed by another statute, acts done in the meantime, while it was in force, shall endure and stand and be good and effectual; Dwarris and Statutes * 675. It is settled by a long roll of cases that the Legislature may vary the nature and extent of remedies, as well as the times and modes in which these remedies may be pursued, but that the abolition of all remedies by a law operating in *praesenti*, is an impairing of the obligation of the contract, and therefore unconstitutional. The laws of the State in force at the time, are a part of the law of the contact as to rights and remedies with-

out any express agreement by the parties. These rights are annexed to the contract at the time it is made, and form a part of it, and any subsequent law impairing the rights thus acquired, impairs the obligations which the contract imposes. Bronson v. McKinzie, 1 How. 311. A good illustration of this point is furnished by the case of Woodruff v. Trapnell, 10 How. 90. In 1836 the State of Arkansas chartered a bank the whole capital of which belonged to the State. The 28th section made the bills and notes of the bank receivable for debts due the State. In January, 1845, this 28th section was repealed. It was held that the notes of the bank in circulation at the time of the repeal were not affected by the repeal, and that a tender in 1847, of notes issued prior to the repeal in 1845, was good to satisfy a judgment against a debtor obtained by the State. In Howard v. Bugbee, 24 How. 461, it was held that a statute which authorized the redemption of mortgaged premises in two years after a sale under a decree, by *bona fide* creditors of the mortgagor, was void as to sales made under mortgages executed prior to the statute.

In the Hickory Tree Road, 7 Wright 139, a road view was presented and confirmed *nisi* by the Court, after which the road law under which it was made was repealed. This left no remedy for damages. The Supreme Court held that the final confirmation of the road, and proceedings to assess damages, must go under the old law as though it had not been repealed.

To take away by legislative act the existing remedies for enforcing the obligation of the contract, so as to leave the creditor without redress, would be a mockery of justice, and repugnant to the Constitution of the United States. The better doctrine is that all effectual remedies affecting the interest and rights of the owner existing when the contract was made, became an essential ingredient in it and are parcel of the creditor's right, and ought not to be disturbed. 1 Kent* 419, note. As bearing on this branch of the case, we might refer to Fletcher v. Peck, 6 Cranch, 87; Green v. Biddle, 8 Wheaton 1; Quackenbush v. Danks, 1 Denio 128; Billmeyer v. .Evans, 4 Wright, 324.

As the result of a careful examination of this case, we are compelled to decide that the answer of the respondent is insufficient, and we therefore award a writ of peremptory mandamas against him.