# Muncy Borough School District *versus* Commonwealth *ex rel.* Witter *et al.*

1. What is a reasonable time within which to present a draft or bill for payment is a question of law to be determined by the court under the circumstances of the case.

2. To purchase school bonds, W., on September 10th, sent a draft on J. C. & Co., making it payable to the order of "School Board, Muncy." The board at a special meeting on September 13th received the draft and in the absence of the treasurer ordered the bonds to be issued on payment of the draft. Upon his return, on the 16th, the draft was delivered to the treasurer after bank hours, and on the 17th was sent by him, properly endorsed, for collection, to his bank at W., eleven miles distant on the road to Philadelphia. On account of a delay in the mail the bank did not receive the draft until the evening of the 18th. On September 20th the draft was presented to J. C. & Co., in Philadelphia, for payment and protested, they having failed on the 18th of September. In a proceeding by mandamus to compel the issue of the bonds, *Held*, that the respondents were guilty of no *laches* in the presentation of the draft, and that the delay under these circumstances was not unreasonable.

3. It is not free from doubt whether mandamus was the proper remedy, and it may well be questioned whether the board were authorized to purchase drafts or commercial ·paper and issue the bonds of the school district in payment therefor.

June 6th 1877.    Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.    SHARSWOOD, J., absent.

[Muncy Borough School District *v.* Commonwealth.]

Error to the Court of Common Pleas of *Lycoming county :* Of May Term 1877, No. 45.

This was a petition for a mandamus by A. C. Witter, H. F. Witter, his wife, by the said A. C. Witter, and George L. Peck, which, in substance, set forth, that on the 5th of April 1870 an Act of Assembly (Pamph. L. 880) was approved, authorizing the directors of Muncy borough school district to borrow money, issue bonds and to sell real estate, and that on the 1st of March 1873 (Pamph. L. 349) a supplement to said act was approved, by which said directors were authorized to borrow money and to issue bonds therefor, and to pay interest on such bonds, not exceeding 8 per cent. per annum, payable semi-annually ; that on or about the 1st of September 1873 the board of directors of said school district, being desirous to borrow money, as authorized by said act, a negotiation was entered into between J. H. Rooker, one of the board of school directors, and the relators, which resulted in an agreement to loan to said school district the sum of $1000, or thereabouts, for which the relators were to receive bonds of said school district to the amount thereof, payable in five or six years, with interest at the rate of 8 per cent. per annum ; that the relators, in pursuance of said arrangement, purchased, on the 10th of September 1873, a draft for $1100 from Pomeroy & Brothers, bankers, of Troy, Bradford county, Pa., on Jay Cooke & Co., bankers, of Philadelphia, and payable to the order of " School Board, Muncy, Pa. ;" that on the same day, to wit, September 10th 1873, said draft was forwarded by mail to said school board, and that by due course of mail the same would have reached Muncy borough the same evening or the next morning ; that said school board did receive the same prior to the 13th of September 1873 ; that there was a meeting of said board on the said 13th of September 1873, at which meeting it was voted, *inter alia,* that bonds be issued to George L. Peck for $500, to A. C. Witter for $500, and to Mrs. A. C. Witter for $100, and that they furnished the money in the aforesaid proportions for said draft ; that said draft was duly endorsed by the board and sent by said board, or by the officers thereof, to Philadelphia, at some time between the 13th and 20th of September ; that it was not presented for payment to the banking house of Jay Cooke & Co. till the 20th of September ; that said Jay Cooke & Co. suspended payment on the 18th day of September 1873, at noon ; that there are, and were at the said time, *through* daily mails from Muncy borough to Philadelphia ; that the said draft was perfectly good when received by the said board of directors, and had the same been presented for payment within a reasonable time it would have been paid ; that in consequence of the laches of said school board in not presenting said draft for payment till the 20th Sep-

3 NORRIS—30

tember 1873, the same was protested for non-payment, and was returned to the said board of directors, and by the said J. H. Rooker to the relators at Troy aforesaid; that they refused to receive the same, and again returned it to said Rooker, demanding the bonds; that it was then returned by mail to the relators, and that the same is held by them for the use of said school board, and whenever they will take the same it will be delivered to them; that said board of directors have neglected and refused, and still do neglect and refuse, to execute and deliver to the relators the bonds to which they are entitled for the money loaned as aforesaid; that under the authority and the facts stated it was incumbent upon said board of directors to issue said bonds, and a refusal to do so was a breach of ministerial duty, for which they were answerable to the court, and by which breach of duty the relators were greatly injured and had no specific legal remedy therefor; and they prayed, therefore, that a mandamus might issue to compel the issue of said bonds.

An alternative mandamus was granted, to which defendants made return, by demurring to the petition on the grounds that. there was no loss or injury sustained by the relators for which there was not an adequate remedy at law, nor any act or omission on the part of defendants for which mandamus was the proper remedy; that the treasurer of the school district, one of defendants, had no authority by virtue of his office to contract for the sale of bonds, nor to sign nor issue them, and that said directors could issue bonds only in consideration of money actually received.

The return then set forth that said defendants on the 13th day of September 1873, during a session of the board of directors of said school district of the borough of Muncy, which was not a stated meeting thereof. but a special meeting, not called for the purpose of considering any application for bonds to be issued to the plaintiffs, or for any purpose of negotiation with them for a loan to be made by them, or any of them, to said defendants; and no such object having been stated by the president of said board at the opening of the session and put on the minutes of said session, a check was laid before the said board by John H. Rooker, acting for the plaintiffs; that it being represented to the board at the said special meeting, that plaintiffs desired bonds to be issued to them for the amount of the check aforesaid; and the said check not being drawn payable to the treasurer of the said board of school directors of Muncy borough, or to the board itself by its corporate name, but as well to the board of the directors of Muncy township as of Muncy borough, it was ordered by the board that bonds be issued to the plaintiffs, at and upon the payment to their treasurer of the money named in the said check, and to date only from the date of such payment of said check; and said bonds were not otherwise authorized or directed by said board to be issued and

[Muncy Borough School District v. Commonwealth.]

delivered to the said plaintiffs, as will appear in the copy of said minutes hereto annexed :—

" Mr. Rooker stated that three of his friends at Troy, Pa., desired to invest in our school bonds, and that he had received from them for that purpose a draft on Jay Cooke & Co., of Philadelphia, for $1100, drawn by Pomeroy & Bro. of Troy. After remarks by several members, secretary was instructed to issue a bond of $500 in favor of George L. Peck, another of $500 in favor of Amos C. Witter, and one of $100 in favor of H. F. Witter, all of Troy, Bradford county, Pa., as desired by Mr. Rooker, to date from payment of said draft. Board adjourned to 17th instant."

That the treasurer was not present at this meeting on the 13th, was away from home and did not return until the evening of the 16th of September, when the draft was delivered to him, and that he endorsed it and forwarded it by the next morning's mail, which was the first mail, for collection, to a bank at Watsontown, eleven miles from Muncy on the way to Philadelphia, where said treasurer did his banking business, and the said bank, in the usual course of business, and without delay, forwarded the same to their correspondents in Philadelphia; that said draft in its transmission by mail was in some manner delayed and did not reach the bank at Watsontown until 6 o'clock of the evening of the 18th of September 1873, upon which day Jay Cooke & Co. failed. That the draft was presented to Jay Cooke & Co., on the 20th for payment and was protested for non-payment.

The relators demurred to this return and the respondents joined therein.

The court, Gamble, P. J., in an opinion said :—

" The draft was accepted by the respondents, in form payable to their order, was endorsed by them, payable to their treasurer, presented for payment and protested at their instance; they are therefore, the proper legal parties to a suit against the drawers. The drawers are bankers, and understood to be abundantly responsible. The only known question touching their liability, is this identical question of laches, not on the part of the relators, but on the part of the respondents. To that issue the respondents must be the legal, and are the appropriate parties in interest, rather than the relators, who had neither the right, the duty, nor the responsibility of the presentation. Under such circumstances, should the respondents be allowed to refuse to issue the bonds, and also refuse to collect the draft? We cannot think so, and propose, so far as we have the power, to require them to do one or the other.

" We have already shown, that in the absence of express proof to the contrary, the legal presumption is, that the draft was delivered and received in payment and satisfaction for the bonds, and that there is no such proof in this case. The relators have therefore at least a prima facie right to demand and receive the bonds,

and there is a corresponding duty resting on the respondents to issue and deliver them. This not only warrants, but makes it the duty of the court, we think, to award a mandamus, especially as we can restrain and control its execution, so as to afford time and opportunity to the respondents to bring suit for the collection of the draft, and thus determine the controversy by the result, be it what it may.

" If the money is collected, that ends the controversy, or if they fail to recover judgment on account of their own laches, the result would be equally conclusive. Thus by one trial between the appropriate parties, we finally settle the main and probably the only issue necessary to settle in this case.

" Judgment must, therefore, be entered upon the demurrer to the respondents' answer against the respondents and a peremptory mandamus awarded."

The entry of this judgment was the error assigned by respondents, who took this writ.

*Henry Johnson*, for plaintiff in error.—Mandamus is not the proper remedy. The respondents had authority to issue bonds for *money* loaned, but this did not authorize them to receive a draft in the stead of money.

Upon the question of laches what is reasonable delay depends upon circumstances and upon time, mode and place of receiving the draft: Story on Prom. Notes, § 491, n. 3 ; Schofield *v.* Bayard, 3 Wend. 488 ; Newark Banking Co. *v.* Second National Bank of Erie, 13 P. F. Smith 404.

*B. S. Bentley, R. P. Allen* and *J. M. Gamble*, for defendants in error.—To be deprived of the remedy by mandamus the remedy at law must be full and complete : Hamilton *v.* Councils of Pittsburgh, 10 Casey 496 ; Bank of Kentucky *v.* Schuylkill Bank, 1 Parsons 191, 220 ; Bank *v.* Adams, Id. 541 ; Kirkpatrick *v.* McDonald, 1 Jones 393.

Laches is the only question of controversy in the case.

[MERCUR, J.—Do you think the question of laches can be determined in this proceeding for a mandamus ?

AGNEW, C. J.—Is there any rule that fixes the time in which to demand payment, or is not the rule that the holder shall demand payment or make presentment in reasonable time ?]

Laches are to be determined by the particular circumstances of each case, and we contend that due diligence was not used here. Schofield *v.* Bayard, 3 Wend. 488, is a case in point. In that case the bill was payable in London and the holders sent it to Liverpool. As is alleged in the case at bar, by a mistake in the mails the bill was not received in London in time. Savage, C. J., in delivering the opinion of the court, says : " This presents no impossibility if

[Muncy Borough School District *v.* Commonwealth.]

due diligence had been used. The plaintiffs should not have sent the bill to Liverpool at all. It is true that after the letter containing it had been left at Liverpool it could not have reached London in season ; but it was the fault of the plaintiffs to have parted with the bill in the manner they did. Instead of sending it to Liverpool, they should have sent it to London, and then it would have been in season and probably paid."

[AGNEW, C. J.—Schofield *v.* Bayard would be a parallel case if the draft had been sent to New York instead of by direct route to Philadelphia.]

The case of the Newark Bank *v.* The Second National Bank of Erie, 13 P. F. Smith 404, cited by the plaintiff, was a case in which a travelling agent purchased a draft for the purpose of taking it with him as a matter of security instead of bank notes, as is very often done. The bank understood this when they sold him the draft. He made short delays on his return home, which was in accordance with his business, and all which was well understood by the bank, and the very gist of the case is that the bank had no reason to suppose that the draft would be sent by any other means than by the agent himself, as he should return to his home in his ordinary mode of travel and business. But that is not our case. Neither Pomeroy Brothers nor the relators could have imagined any such delay as there was, nor were they bound to. Draft was drawn on the 10th, received by the respondents on the 13th, and did not reach Philadelphia till the evening of the 19th—an unreasonable delay which prevented its presentment before the failure of the drawees.

Mr. Justice PAXSON delivered the opinion of the court, June 11th 1877.

The plaintiffs having demurred to the return made by the defendants to the writ of alternative mandamus we must regard all the facts properly pleaded in said return as admitted. It appears that at a special meeting of the board of directors of the school district of the borough of Muncy, held at about six o'clock on the afternoon of Saturday, September 13th 1873, the draft of Pomeroy Bros., of Troy, Pa., dated September 10th 1873, on Messrs. Jay Cooke & Co., of Philadelphia, for $1100 was presented. The draft was to the order of " School Board, Muncy, Pa.," and it was represented to the board that the plaintiffs desired bonds of the school district issued to them for the amount of said draft, in proportion to the amounts respectively contributed by them to the purchase of said draft ; whereupon it was ordered that bonds be issued to the plaintiffs upon the payment of said draft ; and to date from said payment. This is the averment of the return, and it is corroborated by the minutes of the board, which state that the bonds were " to date from payment of said draft." We cannot infer in

the face of this return and the minutes referred to, that the board accepted the draft as cash; their power to do so may well be questioned. The Act of Assembly authorizing them to borrow money and issue bonds therefor on the credit of the district would hardly authorize them to purchase drafts or commercial paper and issue the bonds of the school district in payment therefor. It would be an extremely dangerous doctrine· to hold that municipal officers authorized by an Act of Assembly to borrow money upon the credit of the municipality, could issue the bonds of such municipality for anything but money.

The return then goes on to aver that the treasurer of said board was not present at the meeting referred to, but was absent from his residence until the latter part of Tuesday, the 16th of September, and had no deputy or clerk to whom said draft could be delivered on Monday or Tuesday; that the draft was delivered to the treasurer on Tuesday evening, September 16th; that the said treasurer endorsed it the ·same evening, and by the mail of next morning, September 17th, forwarded it to the Watsontown Bank, in which he kept his account, for collection; that the said bank forwarded the draft in the usual manner and without delay to its correspondents in Philadelphia. There appears to have been some delay in the mail between Muncy and the Watsontown Bank, as the draft reached the latter by the evening mail going north, about six o'clock P. M., of the 18th. On the 20th of September, the draft was presented at the banking house of Jay Cooke & Co., at Philadelphia and protested for non-payment. That firm failed on the 18th of September. Troy, Bradford county, where the draft was dated, is sixty-five miles north of Muncy; Watsontown is eleven miles by rail from Muncy, and one hundred and eighty miles by rail from Philadelphia, while Muncy is one hundred and ninety-one miles by rail from Philadelphia. These are substantially the facts, briefly stated, upon which the defendants resist the right of the plaintiffs to call upon them to issue the bonds of the school district for the amount of the draft. The court below held them insufficient and entered judgment for the plaintiffs upon the demurrer. We regard this ruling as error.

It could only be sustained on the ground of laches on the part of the defendants in presenting the draft for payment. But was there such laches as to charge them with the loss of the draft? The holder of a draft or bill is entitled to a reasonable time to present it. "What is reasonable time will depend upon circumstances, and in many cases, upon the time, the mode, and the place of receiving the check, and upon the relations of the parties between whom the question arises:" Story on Prom. Notes, § 493. A delay caused solely by the neglect of a post-office official will be excused: Schofield *v.* Bayard, 3 Wend. 488; Allen *v.* Suydam, 20 Id. 321. In the National Newark Banking Company *v.* The Second National

[Muncy Borough School District *v.* Commonwealth.]

Bank of Erie, 13 P. F. Smith 404, a draft on New York was purchased by Judson at Erie, Pa., on the 17th of March. On the 19th he left Erie for home, stopping at a number of places to attend to his business as a travelling agent, and arriving at his residence at Newark, N. J., on the 26th of the same month. On the 27th he sold the draft to the Newark Bank, by whom it was presented on the 28th; payment was refused, and it was protested. It was held that under the circumstances the draft was presented within a reasonable time. In the present case the draft was drawn on the 10th and presented on the 20th. It did not come into the hands of the defendants until the 13th. It was payable to the order of the "School Board of Muncy." It must have been known to the drawers and the plaintiffs that such a draft was liable to be delayed. The fact that it required the endorsement of a board of school directors, which had to be convened, and then take action upon the draft, was suggestive of delay. Then there was further delay between Muncy and Watsontown by reason of the mails. This is ground of excuse as we have seen. In point of fact the draft did not reach Watsontown until the evening of the day upon which the drawees failed. The treasurer had a right to send it forward for collection through his bank. It is the usual and proper mode of transacting such business. Then the absence of the treasurer on Monday and Tuesday was an unavoidable accident, and necessarily delayed the transmission of the draft. As treasurer, he was the proper person to receive and forward it. The board had nothing to do with receiving or handling the money. We are unable to see any laches on the part of the defendants, or any delay that was unreasonable in the case of a draft received under the circumstances and for the purposes shown to exist in this case. The facts being ascertained it is for the court to decide what is reasonable time, as a question of law: Story, §§ 155-6. We think the defendants were entitled to judgment upon the demurrer.

We have decided this case upon the merits. We are not free from doubt as to whether the writ of mandamus was the proper remedy. We do not propose to discuss this question, and refer to it to avoid misapprehension hereafter.

> The judgment is reversed, and judgment is now entered for the defendants below upon the demurrer.