## Runkle *versus* Commonwealth ex rel. Keppelman.

1. Where a person or body is clothed with judicial, deliberative or discretionary powers, and he or it has exercised such powers, according to his or its discretion, mandamus will not lie to compel a revision or modification of the decision resulting from the exercise of such discretion, though, in fact, the decision may have been wrong.

2. Under the Act of May 23d 1874, Pamph. L. 230, a city controller is vested with deliberative and discretionary powers, and is not liable to be controlled in his judgment, within the scope of his authority, by any court, through the agency of a writ of mandamus or otherwise.

3. Where the question, as to who is the incumbent of a municipal office, is pending in the Supreme Court, on error to a quo warranto proceeding in the Common Pleas, the city controller will not be forced by mandamus to countersign warrants for salary, drawn upon the city treasury by one of the claimants of the contested office.

March 4th 1881.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Berks county :* Of January Term 1880, No. 114.

This was a writ of error to a judgment of the said court, awarding a writ of peremptory mandamus in favor of the Commonwealth. ex rel. John H. Keppelman against William A. Runkle, city controller of the city of Reading, commanding him to countersign certain warrants drawn upon the city treasurer in favor of said Keppelman, for salary as city clerk, and as secretary of the water board of the city of Reading.

The case was heard in the court below upon demurrer to the respondent's return to the petition and writ of alternative mandamus. The facts, as they appeared by the petition and the return, were as follows :

On April 7th 1879, John H. Keppelman was elected clerk of select council of the city of Reading, and the oath of office was administered to and subscribed by him.   By an ordinance of the select and common councils of the city of Reading, approved December 24th 1875, it is ordained that " the clerk of the select council shall be ex officio city clerk, and secretary of the joint standing and special committees of councils;" and by an Act of Assembly, approved March 21st 1865, it is enacted that the clerk of the select council of the city of Reading shall be ex officio secretary of the board of commissioners of water.   When Keppelman attempted to enter upon his duties, and to hold and exercise the said offices, he was obstructed and prevented by one Edward A. Howell, the former incumbent, upon the ground that Keppelman's bond and sureties had not been approved by councils. Keppelman, thereupon, instituted proceedings by quo warranto against Howell in the Common Pleas of Berks county, and on

[Runkle v. Commonwealth.]

June 18th 1879, the said court entered judgment of ouster against Howell, and Keppelman was thereupon installed in his said offices, and has since continued to perform the duties thereof. Howell sued out a writ of error to remove the proceedings in said quo warranto suit to the Supreme Court, to July Term 1879, No. 65 (see *post*, p. 328), which writ was pending and undetermined at the time of these proceedings in the court below. Howell had exercised the duties of the offices until he was ousted on June 18th 1879, and the salary for the month of April 1879, had been paid to him. Keppelman presented to the city controller warrants for his salary as city clerk, and secretary of the water board, for the months of April and May 1879, which the controller refused to countersign upon the following grounds: 1. Because Howell, and not Runkle, had performed the duties of the said offices during the said months. 2. Because the salary for the month of April had been paid to Howell as city clerk, and secretary of the water board, upon warrants countersigned by the controller, whereby the appropriation for said salary for April 1879, was exhausted; and it was provided by Act of Assembly of May 23d 1874, sect. 35, that "no money shall be drawn from the treasury of the city unless the same shall have been previously appropriated by councils to the purpose for which it is drawn." 3. Because he was advised that the salary of the said offices follows the legal title to the same, and that so long as the title is in dispute, pending the determination of the writ of error to the quo warranto, the city of Reading is not indebted to Keppelman. 4. Because the controller is, by the Act of Assembly creating his office, an officer elected by the people, invested with discretionary and judicial powers, which discretion he has exercised in regard to the relator's claim by refusing to countersign the warrants. 5. Because mandamus is not the proper remedy in this case.

The court, after argument, entered judgment on the demurrer in favor of the relator, and awarded a writ of peremptory mandamus against the said Runkle, city controller, commanding him to countersign the said warrants. Runkle thereupon took this writ of error, assigning for error the said judgment.

*C. H. Ruhl*, City Solicitor, for the plaintiff in error.—The office of city controller for the city of Reading is created by sect. 39 of an act entitled "An act dividing the cities of this state into three classes, &c.," approved May 23d 1874, Pamph. L. 251, which provides, inter alia, "he shall countersign all warrants on the city treasurer, and shall not suffer any appropriations made by the city councils or school board to be overdrawn. * * * Whenever a warrant on the city shall be presented to him to be countersigned, the person presenting the same shall, if the controller require, produce evidence—first, That the amount expressed·

[Runkle *v.* Commonwealth.]

in the warrant is due to the person in whose favor it is drawn; second, That the supplies, or the services for the payment of which the warrant is drawn, have been furnished or performed; third, He shall have authority to administer oaths or affirmations in verification of demands made for his signature. * * * He shall perform all the duties now enjoined on the county auditors by the laws of this state, and shall scrutinize, audit and settle all accounts whatever in which the city is concerned, either as debtor or creditor, where provision for the settlement thereof is made by law."

The controller is thus an officer invested with judicial discretion, which he is required to exercise in the settlement of municipal accounts. His acts are not simply ministerial. He is required to guard the city treasury, and prevent the payment of all claims which he may, in his judgment, consider improper, and may refuse to countersign warrants for payment thereof. He is the agent of the city; and no creditor of the city can, by proceedings against him, directly compel the exercise of his discretion in any particular manner: Com. *v.* The Judges, 3 Binn. 275; United States *v.* Lawrence, 3 Dall. 42; Com. *v.* Hultz, 6 Barr 469; United States *v.* Guthrie, 17 How. 304.

The title to the office of the relator had not been finally determined; the judgment in the quo warranto case had been removed to the Supreme Court on error, and was pending and undetermined. The relator's right therefore being doubtful, could not be enforced by mandamus. He had an ample remedy by action at law for his salary, even if his right to the office were undoubted.

*Richmond L. Jones,* for defendant in error.—It would have been useless for Keppelman to sue the city, for the city did not dispute his right; and if, upon obtaining judgment, we had issued a mandamus, the controller would have arrogated to himself the same supreme jurisdiction to challenge the judgment at law as he has in this case. All the requisites for invoking the high writ of mandamus existed—Keppelman had been duly elected to the office and sworn in; his legal title had been settled by a judgment of the court on quo warranto; the writ of error to that proceeding was not a supersedeas, as no recognisance was filed; and the councils had duly appropriated the money to pay the salary. Mandamus is a proper remedy, even though an action at law may lie, if the latter remedy is not adequate to compel payment: McCullough *v.* The Mayor of Brooklyn, 23 Wend. 458; The People ex rel. Lynch *v.* The Mayor of New York, 25 Id. 680. The latter case is relied on by the other side, but is really in our favor, as all the elements that were lacking there to entitle Lynch to the writ of mandamus are present in this case.

Mr. Justice GORDON delivered the opinion of the court, March 14th 1881.

[Runkle *v.* Commonwealth.]

The court below seems to have regarded the controller of the city of Reading as a merely ministerial officer, otherwise it would not have sustained this writ of mandamus. There is no doubt but that the orders drawn by the relator in his own favor on the city treasurer were properly drawn and countersigned, so far as mere form went; but it by no means follows that he was thereby entitled to the money. Before he was so entitled, the controller must pass upon and approve them, and this, not as a mere ministerial officer, but as one having deliberative and discretionary powers, as the guardian and protector of the city treasury. The Act of 23d of May 1874, clothes him with judicial powers; he must not only countersign warrants drawn on the city treasury, but he is also required to pass upon their rectitude, and for this purpose he may not only make personal inquiry, but may require the production of evidence. In other words, he must be fully satisfied: 1st. That the warrant is proper and right; that the city has received consideration therefor; and 2d. That a proper appropriation has been made to meet it. Moreover, he has authority "to administer oaths or affirmations, in verification for the demands made for his signature."

Upon him also is imposed "all the duties now enjoined on county auditors by the laws of this state, and he shall scrutinize, audit and settle all accounts whatever in which the city is concerned."

But the powers of county auditors are as full and complete, within their jurisdiction, as are the powers of courts. They may issue subpœnas for parties and witnesses; they may compel the production of books and papers, administer oaths, compel the attendance of witnesses, and punish contempts by attachment. With all this judicial and deliberative power, the controller of the city of Reading is clothed, and of necessity he must be left free to exercise his own judgment. But how can he exercise these important functions if he is to be controlled in his judgment by the Court of Common Pleas, or by any other court?

In the present case, Controller Runkle, for reasons satisfactory to himself, refused to approve the warrants drawn in favor of Keppelman; this he had a right to do; this it was his duty to do, if he believed the interests of the city would be protected by the refusal of such approval, and we know of no power in the Common Pleas to substitute its judgment for that of this officer. Had the controller refused to act in the matter at all, the court by its mandamus might have compelled him to act, but this was all it could do, but after he had acted, and had refused to sanction the warrants, it was a mere piece of usurpation on the part of the court to attempt to compel him to revise his decision, and adopt its judgment in preference to his own.

The rule governing cases of this kind may be stated as follows:

[Runkle *v.* Commonwealth.]

Where a person or body is clothed with judicial, deliberative or discretionary powers, and he or it has exercised such powers according to his or its discretion, mandamus will not lie to compel a revision or modification of the decision resulting from the exercise of such discretion, though, in fact, the decision may have been wrong: Griffith *v.* Cochran, 5 Binn. 87; Commonwealth *v.* Perkins, 7 Barr 42; Commonwealth *v.* Mitchell, 1 Norris 343.

But the court was wrong, not only in treating the controller as a mere ministerial officer, but also in treating his act in rejecting the warrants as unsound and improper.

The warrants were drawn for the pay of Keppelman as clerk of the select council; but whether he was so entitled as such clerk, was as yet in abeyance and undetermined.

. Though his title to that office had been adjudged valid by the court below, yet, as the case was still pending in the Supreme Court, it was altogether proper for the controller to refuse the claim of Keppelman until the superior court had rendered its judgment.            The judgment is reversed.