## Snyder v. Klingler, Burgess, et al.

*Mandamus—Ministerial act—No other remedy.*

1. Mandamus lies only where a ministerial act is to be performed and there is no other specific remdy; it does not lie to control a discretion vested in a public board.

2. The relator must show a clear legal title in himself, and the writ is never awarded in doubtful cases.

*Boroughs — Water supply — Right of borough to supply water to non-resident—Acts of June 10, 1885, and May 14, 1915—Mandamus.*

3. Under the Acts of June 10, 1885, P. L. 81, and May 14, 1915, P. L. 312, 376, it is purely a matter of discretion vested in the borough authorities whether or not they shall supply water from the borough tanks to one outside the borough limits.

4. Where a borough grants to an owner of a dairy outside the limits of the borough the right to take surplus or overflow water from the storage tanks of the borough for domestic and dairy use, with a right on the part of the borough to terminate the use at any time, such owner, after being notified by the borough of the termination of the arrangement, cannot by mandamus compel the borough to continue the supply of water.

5. In such case, the relator cannot maintain a right to divert more of the water from the storage tank than the mere surplus or overflow based on the consent of individual members of the borough council, without any corporate action in a business session of the council.

6. The facts that the relators expended large sums of money in increasing and enlarging the capacity of their dairy did not affect the borough's right to terminate the arrangement as to water when it chose.

Petition for mandamus. C. P. Union Co., May T., 1926, No. 64.

*Lee Francis Lybarger* and *David R. Crosgrove,* for plaintiffs.

*Harry M. Showalter* and *William H. Hackenburg,* for defendants.

POTTER, P. J., March 13, 1926.—Mifflinburg is a duly incorporated borough, located in Union County, and has and owns its own water system, from which it supplies persons residing within its limits with water for domestic use as well as for fire protection. This borough, by its burgess and its borough council, are the defendants in this action.

The plaintiffs, Charles F. Snyder and his son, Arthur S. Snyder, reside, just outside the borough boundary of Mifflinburg, on a farm, where they

maintain, in connection with the operation of their farm, a dairy, from which they supply quite a number of the citizens of the said borough with milk.

Close to the buildings of the Snyder farm are two large tanks, in which is stored the water for Mifflinburg Borough, these tanks being about on the summit of a high hill immediately south of the said town, just across the summit of which are located the Snyder buildings.

Some time in the year of 1911, or shortly prior thereto, the plaintiffs made application to the said Borough Council of Mifflinburg to supply them with water from one of these tanks, or perhaps from both, for the purpose of enabling them to carry on their dairy business, and on the minutes of the said borough council, under date of March 3, 1911, we find the following: "Mr. C. F. Snyder & Son being present in regard to securing water from the overflow tank, borough solicitor made report on this matter. Motion of Roush, seconded by Knarr, that water be given Mr. Snyder & Son, provided they furnish the borough with a bond to amount of $500.00."

There is no item in these minutes showing whether the motion was voted upon or not, nor whether it carried or not. We are led to believe, however, that it was voted upon affirmatively, because the plaintiffs have been using water from these tanks from shortly thereafter up to December, 1924.

The next extract from the minutes is dated April 7, 1911, which is as follows: "Borough solicitor read contract of C. F. Snyder & Son and H. B. Young, as surety, to the amount of $500.00. Motion by Roush, seconded by Orwig, that contract be approved by council."

Here, again, the proceedings are woefully lacking in not showing that the motion was acted upon by the council in session. These deplorable omissions in the recording of the borough minutes or of the official action by the borough council should not occur.

The bond or contract, or by what name it may be designated, is as follows:

"*Know all men by these presents*, That we, Charles F. Snyder, Arthur S. Snyder and Harry B. Young, all of the County of Union, State of Pennsylvania, are held and firmly bound unto the Borough of Mifflinburg, a municipal corporation in the County of Union and State of Pennsylvania, the County of ——————, in the sum of Five Hundred ($500.00) Dollars, to be paid to the said Borough of Mifflinburg, or its certain attorney, Executors, Administrators or assigns, to which payment well and truly to be made and done, we do bind ourselves and our heirs, executors, administrators and every of them, firmly by these presents. Sealed with our seal, and dated the fourth day of May, A. D. 1911.

"*Whereas*, the said Charles F. Snyder is desirous of utilizing a portion of the *overflow or surplus water* flowing from the tank or reservoir belonging to said borough and being situated on the hill in the southern portion of said borough along the road leading to New Berlin, said water to be conducted by a pipe not exceeding three-fourth inch in diameter from said overflow at a point near the tank to the premises of said Charles F. Snyder, situate on the east side of said public road in Limestone Township, near the borough line;

"*And whereas*, the Borough of Mifflinburg, favoring the request of the said Charles F. Snyder, has consented to his using so much of said *overflow or surplus* water as he may need for household, domestic and dairy purposes on his premises now occupied by him, and not elsewhere, and the quantity of water used shall in no case exceed the overflow or surplus of the tank; the said Charles F. Snyder to lay his own pipe at his own cost and risk, and shall pay to the Borough of Mifflinburg such amounts as may be fixed and determined by it from time to time, and shall save, defend, indemnify, protect and keep

said borough free from all costs, suits, damages, demands, charges and expenses of all and every kind and nature and character growing out of or accruing from its granting him the use of the water as above indicated, and also further providing that this arrangement may be terminated and ended at any time by said borough at its pleasure, without any liability of any kind for so doing.

"Now the condition of this obligation is such that if the said Charles F. Snyder shall at his own cost and expense construct a pipe-line as aforesaid, pay to the said Borough of Mifflinburg for the use of water, and save, defend, indemnify and keep it harmless and free from all claims, demands, suits, costs, charges and expenses of any kind growing out of or in any way connected with the granting to him by said borough of the use of water as herein provided, without any fraud or further delay, then this obligation to be void and of none effect, otherwise to be and remain in full force and virtue.

CHARLES F. SNYDER      Seal

· ARTHUR S. SNYDER      Seal

HARRY B. YOUNG      Seal"

Under this arrangement, as it is designated, the plaintiffs continued to use water from these storage tanks up to Dec. 2, 1924, when the said council shut off their supply, having given them notice of their intention of so doing the last of July, 1924, notwithstanding which notice and shut off, the plaintiffs have continued to draw their necessary supply of water, by siphon, from these tanks up to a very recent date.

The plaintiffs sued out this writ of mandamus, which was issued in the alternative form, in order to have their former supply of water restored to them, which is resisted by the said council.

As we view the matter, the only question before us is whether or not the plaintiffs have a legal right to the water. If they have, the writ should be made peremptory. If they have not, these proceedings should be dismissed.

Mandamus is a legal remedy for the enforcement of a legal and established right: 38 Corpus Juris, 541. And it lies only where a ministerial act is to be performed and there is no other specific remedy: Tatham v. Wardens of Philadelphia, 2 Phila. 246; Com. v. Thompson, 2 Foster, 394. And the relator must show a clear legal right or title in himself: Young's Appeal, 153 Pa. 34; Douglas v. McLean, 25 Pa. Superior Ct. 9. And the writ is never awarded in doubtful cases: Muncy Borough School District v. Com., 84 Pa. 464. This writ does not lie to control a discretion vested in a public board: Com. v. Shaw, 96 Pa. 268; Dechert v. Com., 113 Pa. 229; Lehigh County v. Hoffort, 116 Pa. 119; Walter v. Mahaffey, 24 Dist. R. 954; Grant v. City of Erie, 69 Pa. 420; Rungle v. Com., 97 Pa. 328; Reese v. Board of Mine Examiners, 248 Pa. 617.

This brings us to the question as to whether these plaintiffs have a legal right to the water that has been shut off from them. If they have not, then there is no right here to be enforced by mandamus.

It is an admitted fact that these plaintiffs reside outside the borough limits of Mifflinburg, and, therefore, they could have no legal right to the use of the water coming from the borough water system.

However, by the Act of June 10, 1885, P. L. 81, as well as by the Borough Code of May 14, 1915, chap. 6, art. XVII, § 22, P. L. 376, it is made lawful for the borough to supply water from its water supply, for ordinary and domestic use, to persons outside the limits of such borough, at rates not less than those required to be paid by persons within its limits.

Snyder *v.* Klinger, Burgess, et al.

Prior to the passage of the Act of June 10, 1885, P. L. 81, the borough authorities had no authority to supply water outside of the borough limits. This act, however, confers upon the borough authorities the legal authority to supply persons outside the borough with water for ordinary and domestic use, *whenever they may deem it advisable so to do.* It is plainly to be seen, from the language of this act, that it was purely a matter of discretion vested in the borough council whether or not they would supply water from the borough supply to one outside the borough limits. There was no compulsion about it, and such a person could not compel them to supply him with water.

The spirit of this act has been re-enacted in the Borough Code of May 14, 1915, P. L. 376, wherein it is stated that "it shall be lawful" for them to do so, which before was unlawful. Here, again, this same discretion is vested in the borough council. They can do so, or not, as they may see fit. So that, in the first instance, it was purely a matter of sound discretion whether or not the borough council would supply these plaintiffs with water. They saw fit to exercise their legal discretion affirmatively upon the application of the plaintiffs, and, by official action, gave them the right to the use of the borough water upon certain conditions, as is set out in the bond or contract, required of them and accepted by the borough, one of which was or is "that this arrangement may be terminated and ended at any time by said borough at its pleasure, without any liability of any kind for so doing."

This bond, or contract, is signed by these plaintiffs. It is not signed by the borough council. Or, these plaintiffs voluntarily conferred upon the borough council the full and complete authority to shut off the water from them at pleasure, at any time, giving no reason for so doing, even if they otherwise could not legally do so.

This language seems very plain, and the plaintiffs, of their own volition, assumed this provision in this bond or contract. Why, then, should not they be bound by it? From a legal viewpoint, we fail to see why they should not.

Then, again, this bond or contract provides that these plaintiffs are to take the water from the surplus or overflow of the storage tanks.

As originally taken, the water was drawn from near the top of the tanks. Some time in the year 1919 these plaintiffs changed their mode of taking the water by making a tap from the bottom of both tanks. They claim this change was made with the consent of the borough council, but nowhere is there in the minutes any record of any official action by the council permitting this change, and it is maintained by the defendants that no such authority was given and that they did not know of the change. The plaintiffs claim they spoke to several of the council upon the street about it, and that they consented to its being done. Three, if not four, of the then councilmen deny this. At any rate, we are satisfied that no corporate consent was given. The defendants contend, as one of their reasons, that because of this breach of the contract by the plaintiffs, the water was shut off from them. Corporate action must be taken in corporate session by the council in business session. It cannot be taken by any expression of members of the council anywhere than in corporate session, and the minutes must show such action. The records of the transaction of business by the council are lacking of any such corporate consent, without which we must hold that there was none.

It is contended by the plaintiffs that they have expended large sums of money in the modernizing and enlargement of their dairy business on the strength of the continuance of this water supply, and that by its discontinuance they will suffer a large financial loss; that they had acquired a right to the use of the water, and that it was wrongfully taken from them.

In the acts of assembly herein cited we fail to see any time limit during which this permissive water supply was to continue. Therefore, the time limit must be fixed by the parties to the contract, and they have so fixed it to be ended at the pleasure of the council. Just how we are supposed to shut our eyes to this provision of the bond or contract, voluntarily executed by these plaintiffs and accepted by the defendants, we are at a loss to know. When the plaintiffs signed this bond, they well knew that it contained this provision, whereby they expressly gave the borough council full authority to shut off the supply of water at pleasure, and, in the face of this provision, if they expended money in and about their dairy plant, at least a part of which they claim they now will lose by the shutting off of the water, the loss, if any, is of their own creation, their own fault, with no one to blame for it but themselves. It might have been well for them to have consulted legal counsel before executing the bond, which, had they done, they might not be in the unpleasant situation in which they now find themselves.

It is contended that the entire contract between these parties is included in the extracts, hereinbefore quoted from the minutes of this borough council, and that this bond or contract is to be treated as surplusage. We cannot so regard it. The excerpts taken from the minutes simply give to the plaintiffs the right to use water, and the bond or contract provides the manner in which it is to be taken, as well as other conditions under which it is given. We, therefore, regard the excerpts from the minutes, being the action by the borough council and the bond or contract signed by the plaintiffs, as all going to make up the entire contract, neither of which, taken alone, forms an entire contract. A contract must be a meeting of two or more minds, an offer by one and the acceptance of that offer by the other. The council, by the extracts from their minutes, offered water to the plaintiffs, who, by their bond or contract filed, accepted the offer of the council, whereby the contract became complete.

Much time was taken at the argument by the learned and respected counsel for the plaintiffs in trying to convince us that the council had given to the plaintiffs a license to use this water. We do not regard this as a material question in this issue. Call it a license, a right, or by what name, the defendants unquestionably had the right to terminate it *at pleasure,* which they did, giving the plaintiffs four months' or more notice of their intention of so doing.

A license is the granting of a special privilege to one or more persons, not enjoyed by citizens generally or, at least, not by a class to which the licensee belongs: 37 Corpus Juris, 167. It is a formal or official permit or permission to carry on some business or do some act which, without the license, would be unlawful, the words "license" and "permit" often being used synonymously: 37 Corpus Juris, 167. Except where the duration of a license is expressly fixed by the license agreement, the period of time for its duration or existence ordinarily is indefinite, and, subject to certain exceptions, rests in the discretion of the licensor, by whom it may be revoked at any time: 37 Corpus Juris, 288.

So the licensor may revoke, at any time, if no duration of time is fixed. Doubly so can the licensor revoke when the time limit is set, as in the case at bar, "at pleasure." Let us, then, for the sake of the argument, call it a license, as is maintained by counsel for the plaintiffs. There is no specific time limit fixed for its life. Therefore, the borough council could revoke it at any time, even without reserving a clause to that effect in the contract, and more surely can they do so when they do reserve in the contract a right to terminate and end it at their pleasure, as in this case.

Snyder v. Klinger, Burgess, et al.

To sum up the contention, the plaintiffs, residing outside the borough limits, had no legal right to water from the water plant owned and maintained by the Borough of Mifflinburg. It was a matter of deliberative discretion, to be exercised by the borough council, whether or not they would supply the plaintiffs with water. It was also a matter of discretion with the said council as to how long they would continue to supply water, and especially so when the contract stipulated that this supply could be ended at the pleasure of the said council.

So much for the legal end of this controversy.

From a moral viewpoint, we would be pleased to see this supply of water continued to the plaintiffs. In this expression the court is unanimous. But in the performance of our judicial duties we must at times pass upon questions submitted to us according to law, as we see it, although our moral convictions are otherwise. We fully realize the situation of the plaintiffs, but in the face of the record of the proceedings brought before us, we are powerless to help them. We are not in office to legislate. It is our duty to interpret the laws as we see them. This we must at all times do, no difference what may be our own personal feelings. And that is what we are doing in this case. We would prefer to make this mandamus peremptory, but in view of the facts as they exist, and in view of the light shed upon and applicable as matter of law, we cannot do so. We have a judicial duty to perform, and we must perform that duty and interpret the law as we find it, regardless of friendships, social ties or anything else; then we will have performed our official duties. Otherwise, we would not.

And now, to wit, March 13, 1926, the prayer of the petition is refused and the mandamus proceedings are dismissed.

From Charles P. Ulrich, Lewisburg, Pa.