## Malehorn v. City of Philadelphia et al.

*M. J. McEnery*, for plaintiff.

*David J. Smyth*, city solicitor, and *Thomas B. K. Ringe*, assistant city solicitor, for defendants.

LAMBERTON, J., December 7, 1932.—On petition of Ellis S. Malehorn, a former patrolman of the City of Philadelphia, a writ of alternative mandamus issued on June 9, 1932, directed to the City of Philadelphia, the mayor, the director of public safety and the members of the Civil Service Commission, requiring the members of the Civil Service Commission to show cause why an order of the commission entered on August 1, 1930, should not be reversed, and requiring the City of Philadelphia et al. to show cause why an accounting should not be had of the moneys due petitioner for salary from October 16, 1928, until July 17, 1930, and a judgment entered for such sum as shall be found due petitioner.

Defendants filed a return in which the important facts alleged in the petition were admitted, but it was averred that the petition should be dismissed because: (1) The action of the Civil Service Commission was regular and proper; (2) the courts will not control by mandamus the discretionary acts of the Civil

Service Commission; (3) petitioner has an adequate remedy at law; (4) petitioner has been guilty of laches.

The matter came up for hearing before the three judges of this court on July 6, 1932, at which time evidence was presented on behalf of the petitioner, but no evidence was presented on behalf of the defendants.

### Findings of fact

1. Ellis S. Malehorn, the petitioner herein, is a resident of the City of Philadelphia.

2. The City of Philadelphia is a municipal corporation of the first class, of which J. Hampton Moore is mayor and Kern Dodge is director of public safety.

3. William J. Krieder, Herbert W. Salus and Marian C. Pyle are the civil service commissioners of the City of Philadelphia, having been duly elected to such office by the city council in the manner provided by law.

4. Petitioner was appointed to the police department as a patrolman on November 6, 1924, and was continuously in service as such until October 16, 1928, on which date he was suspended from the performance of his duties by the director of public safety.

5. Subsequent to his suspension, charges were filed against him with the Civil Service Commission as follows:

"*Conduct unbecoming an officer.* Specification 1. In that it is alleged by one Jennie Hicks, seventeen years of age, No. 7529 Limekiln Pike, that you assaulted and raped her, as a result of which you were placed under arrest. This on October 16, 1928."

6. The commission investigated this charge and conducted hearings thereon after due notice to petitioner, the final hearing being held January 10, 1930, on which date petitioner was found not guilty and ordered restored to duty, and it was further ordered that he receive his pay lost during the period of suspension, less the sum of $1120 which petitioner had earned from other service during such period.

7. This order was duly certified by the commission to Lemuel B. Schofield, then director of public safety, who never restored petitioner to duty but continued to carry him on the roll of the police bureau as a patrolman under suspension.

8. Petitioner was again suspended on July 17, 1930, by the director of public safety and charges of conduct unbecoming an officer were filed against him with the Civil Service Commission. The charge was that petitioner had engaged in the illegal sale of liquor.

9. Petitioner was duly notified to appear before the Civil Service Commission to answer said charge on July 30, 1930. Petitioner did not appear. The hearing was duly held, testimony was taken, the petitioner was found guilty as charged and ordered discharged from the police force.

10. At the hearing held on July 30, 1930, the testimony taken related solely to the charge of illegal sale of liquor and no further evidence was produced in regard to the charge of rape, upon which petitioner had previously been tried.

11. On August 1, 1930, the Civil Service Commission made the following order, due notice of which was given to petitioner:

"Upon the evidence produced at the trial of Patrolman Ellis Malehorn on July 30th, the commission reverses its decision of January 10, 1930, on Case 2890, and directs that he receive no pay from the date of his suspension, October 16, 1928, to January 10, 1930, the date of reinstatement as ordered by the commission."

12. The petitioner received no notice of the intention of the commission to investigate or alter or reconsider its previous decision of January 10, 1930, other

than the notice he received to appear before the commission to answer the said charge of illegal sale of liquor.

13. The petitioner was never advised to report for duty by the director of public safety following the order of the commission of January 10, 1930. Petitioner on several occasions went to the office of the superintendent of police in City Hall, Philadelphia, but did not see the superintendent. Petitioner was at all times ready and willing to work, but was never requested nor ordered nor detailed to perform any duty.

14. Petitioner at all times between October 16, 1928, and July 30, 1930, was carried on the official rolls of the police department as a patrolman of the said department under suspension.

15. The salary of patrolmen of the City of Philadelphia was fixed by the council of the city at $5.50 per diem for the years 1928 and 1929, and at $6 per diem for the year 1930.

16. Petitioner received no salary between October 16, 1928, the date of his original suspension, and July 30, 1930, the date of his discharge from the police department.

### Discussion

It will be noted that petitioner is not asking that he be reinstated on the police force. He admits that he was rightfully discharged on July 30, 1930, but he contends that his only legal discharge was on the charge of illegal sale of liquor, and that he is entitled to full pay from the date of his original suspension on the rape charge on October 16, 1928, until his suspension on the liquor charge on July 17, 1930, less the sum of $1120 which he admittedly earned during that period. He asks us by mandamus to direct the payment of this money to him and to clear up the record by ordering the Civil Service Commission to reverse its order of August 1, 1930.

The Civil Service Commission in the trial of police officers does not act in a purely ministerial capacity, but is clothed with judicial, deliberative and discretionary powers: Souder v. Philadelphia, 305 Pa. 1. The law is settled that mandamus will lie to compel such a body to exercise its judgment and discretion, but will not direct how it shall be exercised: Runkle v. Com. ex rel. Keppelman, 97 Pa. 328; Com. ex rel. Short v. Woodward, County Controller, 84 Pa. Superior Ct. 124. The law also seems plain that, when such a body has acted, mandamus will not lie to undo that which has already been done: Runkle v. Com. ex rel. Keppelman, supra.

We need not, however, in this case go to the length of saying that the court will never by mandamus direct the Civil Service Commission to undo something which it has wrongfully done, but we do say that there is no necessity for such action in this case. We are not even undertaking to decide whether or not the reversal of its judgment was within the power of the commission. We do say that if the reversal was beyond the power of the commission, such reversal is void and an absolute nullity. It does not in any way stand in the road of petitioner. Mandamus is an extraordinary remedy and will not lie where it is unnecessary or where it would prove unavailing: Underwood v. Gendell, 227 Pa. 214.

The real object of petitioner is to secure payment of his back wages. The law is clear that mandamus will not lie where there is a specific, complete and adequate remedy at law: Overseers of Porter Township v. Overseers of Jersey Shore, 82 Pa. 275; Com. ex rel. Snyder et al. v. Mitchell et al., 82 Pa. 343; Underwood v. Gendell, supra. It is true that in similar cases, where a police officer is seeking reinstatement by mandamus, as an incident to the order of reinstatement, a direction may be made that his back wages be paid to him, but

this is merely on the ground that, once having taken jurisdiction to direct reinstatement, the court will take jurisdiction of the entire proceeding. In this case there is really nothing before us except petitioner's demand for payment. He can bring a suit at law against the City of Philadelphia, and such suit would constitute a specific, complete and adequate remedy. If the Civil Service Commission acted beyond its powers in reversing its finding of January 10, 1930, this action will not in any way interfere with recovery by petitioner. If such action was beyond the powers of the Civil Service Commission, it is a nullity and would constitute no defense.

### Conclusions of law

1. The only relief sought by petitioner is recovery of back wages.
2. For such recovery petitioner has a specific, complete and adequate remedy at law.
3. Mandamus is, therefore, not a proper remedy.
4. The prayer of the petition should be refused.

### Order

And now, to wit, December 7, 1932, the prayer of the petition is refused.