Commonwealth *v.* Woodward, Appellant.

Argued March 13, 1933 and reargued May 1, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Bernard T. Foley,* for appellant, cited: Commonwealth v. Exler, 243 Pa. 155; Commonwealth v. Duffy, 96 Pa. 506; Commonwealth v. Lewis, 6 Binn 266.

*Mortimer E. Graham,* District Attorney, and with him *Burton R. Laub,* Assistant District Attorney, and *William F. Illig,* Assistant District Attorney, for appellee, cited: Bank of Pennsylvania v. Commonwealth, 19 Pa. 144; Southward Bank v. Commonwealth, 26 Pa. 446; In Re: Miles' Estate, 272 Pa. 329.

Opinion by Cunningham, J., October 2, 1933:

On May 10, 1932, Lawrence Woodward, alias Larry Woodward, alias Lawrence Boyle, the appellant herein, was convicted at No. 111 February Term, 1932, of the court of Quarter Sessions of Erie County, of hav-

ing, on March 3, 1932, feloniously broken and entered "box car No. P. R. R. 92408," then standing upon a designated track of the Pennsylvania Railroad Company, with intent to "steal, take and carry away" the property of that company contained therein.

The following day he was sentenced to pay a fine, pay costs, and undergo imprisonment in the Allegheny County Workhouse for an indefinite term of from two to four years.

On August 8, 1932, the district attorney of Erie County invoked against him the provisions of the Act of April 29, 1929, P. L. 854, "authorizing the sentencing of persons convicted for a second or subsequent offense of certain crimes to additional prison terms and to imprisonment for life."

Thereupon, the court below directed that appellant be brought before it on September 14, 1932, for the purpose of answering the information filed by the district attorney, accusing him of four previous convictions of crimes of the character set forth in the Act of 1929, "and for the purpose of being tried as an habitual criminal."

As the result of the trial, then conducted before the court below with the aid of a jury, the trial judge, on October 11, 1932, vacated the sentence imposed May 11, 1932, and sentenced appellant to undergo imprisonment in the Western Penitentiary, "by separate or solitary confinement at labor, for and during the period of his natural life." The appeal now before us is from that sentence.

Material facts, established by the admissions of appellant upon the witness stand, the verdict of the jury, and stipulations filed by counsel, may be thus stated.

(1) On December 8, 1913, appellant, under the alias of Lawrence Boyle, was sentenced by a court of criminal jurisdiction in and for Chautauqua County, New

York, to imprisonment in the New York State Reformatory, at Elmira, upon his plea of guilty to an indictment charging him with having committed the crime of perjury on March 12, 1913, in the course of the trial of a criminal case involving a charge of petty larceny, a misdemeanor under the laws of that state.

By the statutes then in force in the state of New York, the maximum penalty for perjury, committed under such circumstances, was imprisonment for ten years.

Appellant was released from the reformatory, on parole, February 13, 1915, and was not returned to that institution.

(2) On November 24, 1915, appellant, under the alias of Lawrence Boyle, was sentenced by a criminal court of Chautauqua County, New York, to imprisonment for a term of two years and five months in Auburn Prison, upon his plea of guilty to an indictment charging him, along with one Floyd Woodward, with the offense of having, on September 9, 1915, feloniously broken and entered, at the City of Jamestown, freight car No. 72672 of the Erie Railroad, with intent to steal and carry away the merchandise therein.

At his trial in Erie County on September 20, 1932, under the provisions of the Act of 1929, appellant denied he was the person convicted and sentenced to the above mentioned terms for the above described offenses of perjury and breaking and entering a railroad car, but the jurors, to whom the question of the identity of appellant with the Lawrence Boyle, indicted and sentenced as above, was specifically submitted, found, by their verdict, that appellant "is the same person" as the one sentenced and imprisoned as set forth in the above paragraphs, numbered (1) and (2).

We may say in passing that, in our opinion, the issues of fact which arose in this proceeding were properly submitted to the jury and that its findings are supported by competent evidence.

(3) On September 11, 1919, appellant, under the alias of Lawrence Boyle, was convicted at No. 19, September Term, 1919, of the court of quarter sessions of Erie County, Pennsylvania, of the crime of having, in the night time of July 3, 1919, feloniously broken and entered a garage building, in the Borough of Girard, with intent to steal the property therein, and of having stolen therefrom a Packard automobile and accessories, the property of C. Elizabeth Battles. On the same day he was sentenced to the Western Penitentiary for an indefinite term of from three years and nine months to seven years.

(4) On February 13, 1925, appellant, under his own proper name, was convicted at No. 23, February Term, 1925, of the court of quarter sessions of Erie County, of the crime of having, on December 25, 1924, feloniously broken and entered a box car, on the tracks of the Pennsylvania Railroad Company in the City of Corry, with intent to steal the property therein, and of having stolen shoes therefrom of the value of about $300.

The following day he was sentenced to pay a fine and the costs of prosecution, make restitution, and undergo imprisonment in the Western Penitentiary for an indefinite term of from one year and six months to three years, to begin at the expiration of his sentence at No. 19, September Term, 1919.

Appellant, when on the stand, admitted his identity with the Lawrence Boyle convicted at No. 19, September Term, 1919, of the quarter sessions of Erie County, as set out in paragraph (3) hereof.

The "certain crimes," referred to in the title to the Act of 1929, are thus enumerated in Section 1: "Treason, murder, voluntary manslaughter, sodomy, buggery, burglary, *entering with intent to steal*, robbery, arson, mayhem, kidnapping, sale of narcotics, *perjury*, abortion, pandering, incest, or any offense committed

or attempted to be committed through the instrumentality of or with the aid of a deadly weapon or gunpowder or other explosive substance or corrosive fluid.''

The act makes a classification, as to the possible punishment authorized, of defendants shown to have been previously convicted, based upon the number of such convictions; the first class includes those having either one or two convictions against them, and the second those having three or more.

As to the first class, Section 1 provides, in substance, that a defendant who has been convicted, ''within or without the Commonwealth,'' of any of the specified crimes, may, ''upon conviction of any of such crimes for a second offense committed within five years after the first offense, or subsequent offense committed within five years after the prior offense, be sentenced to imprisonment for a term the maximum of which shall not be more than twice the longest term prescribed upon a first conviction for the crime in question.''

With respect to the second class, the authority to impose a sentence of life imprisonment upon a defendant, whose criminal record places him within it, is found in Section 2, reading:

''Section 2. A person who, after having been three times convicted, within or without this Commonwealth, of crimes of the character above set forth, or of attempt to commit any such crimes, shall, upon conviction of any such crimes for a fourth or subsequent offense committed within five years after the prior offense, be sentenced, in the discretion of the judge trying the case, to imprisonment in a state penitentiary for the term of his natural life.''

By Section 3, it is provided that in computing the period of time between convictions, ''any period of servitude by a person in a penal institution, within or

without this Commonwealth, shall not be included in the computation of any of said five-year periods," but they "shall run only during the time any such person was at liberty." The crime for which appellant was convicted on February 13, 1925, numbered paragraph (4), was committed on December 25, 1924, and the crime for which he was convicted on May 10, 1932, was committed on March 3, 1932. Although more than five years elapsed between the commission of these offenses, it was not contended that appellant was "at liberty" for a period of five years between the dates of these crimes.

The information, filed by the district attorney under Section 4 of the Act of 1929, was based upon the contention of the Commonwealth that appellant had been convicted of crimes specified in the first section of the act "three or more times," previous to his conviction of one of those crimes on May 10, 1932. In other words, that each of the four convictions enumerated above, in numbered paragraphs (1), (2), (3) and (4), two of which were without and two within the Commonwealth, was a conviction of a crime enumerated in Section 1 of the act. The procedure prescribed by Section 4* was followed in this case.

---

* Section 4. If at any time within two years, either after conviction or sentence, it shall appear that a person convicted of any of the crimes set forth in section one of this act has previously been convicted of any such crimes three or more times, it shall be the duty of the district attorney of the county in which the last conviction was had to file an information accusing the said person of such previous convictions, and to serve a copy of such information upon the defendant thirty days before taking any further proceedings in court as hereinafter set forth. Thereupon the court in which the last conviction was had shall cause the said person, whether confined in prison, penitentiary or otherwise, to be brought before it, and shall inform him of the allegations contained in such information and of his right to be tried as to the truth thereof according to law, and shall require such offender to say whether he is the same person as charged in such information or not. If he says he is not the same person, or refuses to answer, or remains silent, his plea or the fact of his silence shall be entered on record,

As two of these convictions, namely, Nos. (2) and (4), as well as the last conviction in 1932, were for the offense of having broken and entered a *railroad car*, with intent to commit a felony therein—a crime made a felony by, and punishable under, Section 1 of the Act of May 23, 1887, P. L. 177, (18 PS § 3043)—the question naturally arises whether the words, *"entering with intent to steal,"* as used in Section 1 of the Act of 1929, should be construed to include the crime of breaking and entering, or entering without breaking, a railroad car, with intent to commit a felony therein, or whether that language was intended to cover only the offenses defined in Section 136 of the Penal Code of March 31, 1860, P. L. 382, 415, as amended by the Acts of April 22, 1863, P. L. 531, and March 13, 1901, P. L. 49, (18 PS § 3042).*

Obviously, Section 136 of the Penal Code, as amended, is intended to cover every entering of a *building*, with intent to commit any felony whatever therein, but in which act one or more of the essential elements of the crime of burglary, as defined in Section 135, (18 PS § 3041), is absent.

and a jury shall be empanelled to inquire whether the offender is the same person mentioned in the several records as set forth in such information. If the jury finds that he is the same person, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he is the same person, the court may sentence him to imprisonment for life prescribed in section two of this act, and shall vacate any previous sentence notwithstanding that the term of court in which the last sentence was imposed may have expired. Such sentence shall be reviewable on appeal by the Supreme or Superior Courts, not only as to alleged legal errors but also as to the justice thereof. ......"

* "If any person shall in the daytime break and enter any dwelling house, shop, warehouse, store, mill, barn, stable, outhouse or other building, or wilfully or maliciously, either by day or by night, with or without breaking, enter the same with intent to commit any felony whatever therein, the person so offending shall be guilty of felony, and on conviction be sentenced to pay a fine not exceeding five hundred dollars, and to undergo an imprisonment by separate or solitary confinement at labor not exceeding ten years."

Railroad cars are not included in Section 136 of the Penal Code, as originally enacted or specifically amended.

The first reference to entering cars, etc., is found in the Act of 1887, supra, enacted as a supplement to the Penal Code. Its title is: "A supplement, to an act, entitled 'An act to consolidate, revise and amend the penal laws of this commonwealth,' approved, ...... relating to breaking or entering cars or locomotives and providing penalties therefor."

By Section 1 it is enacted: "That if any person shall break and enter any car, caboose or locomotive, or wilfully or maliciously, either by day or by night, with or without breaking, enter the same with intent to commit any felony whatever therein, the person so offending shall be guilty of felony, and on conviction be sentenced" to a fine not exceeding $500, and imprisonment not exceeding four years, either or both.

The Act of 1929 is highly penal and is not to be extended, in its application, to cases which do not clearly come within its language. Legislative intent must be gathered from the words used in the statute. Before we conclude that the legislature intended that a defendant may, upon a fourth conviction of entering a railroad car with intent to steal, be imprisoned for life, we must be able to find in the statute language, the plain meaning of which expresses such intent.

The legislature did not expressly declare that intent. Does it plainly arise by implication from the language used? In our opinion, it does not.

The fact that the words "entering with intent to steal" follow immediately after the word "burglary," in the enumeration of the crimes to which the act is to apply, is, we think, some indication that the crime intended to be described thereby is that of entering a *building*—punishable under Section 136 of the Penal Code. That these crimes are closely related is ap-

parent from the order in which they were arranged in the code. In Hollister v. Commonwealth, 60 Pa. 103, a case in which a store had been broken and entered, our Supreme Court, speaking of Section 136, said:

"That section is special, and to cover cases not within the definition of burglary, but partaking of its nature, and applies where the breaking takes place in the day-time, into any dwellinghouse, shop, warehouse, store, mill, barn or stable, outhouse or other building, or an entry by day or night without breaking, with intent to commit a felony therein. This section seems to have been designed to punish the felonious intent with which an entry is made, even if no felony be actually committed. It is like the offense of burglary in this respect; otherwise it is quite unlike it, as it is not necessary to be in the night-time, and in one aspect of it the offense is complete without a breaking."

We think it is particularly significant that when the legislature in 1887 concluded to make the entering of a railroad car by day or by night, with or without breaking, with intent to commit any felony whatever therein, a criminal offense and to prescribe a severe punishment therefor, it did not do so by further amending Section 136 of the code. If the legislature had considered the offense of entering railroad cars of equal gravity with, and of a nature kindred to, the crime of entering buildings, it would naturally have amended Section 136 by incorporating the words, "railroad car, caboose or locomotive" therein.

The representatives of the commonwealth point to the phrase, "crimes of the character above set forth," as found in Section 2 of the Act of 1929, and argue that entering a car is a crime of the same character as that of entering a building.

Apparently, the legislature did not so regard them. By the Act of 1901, supra, it increased the maximum

punishment for entering buildings from four to ten years but left it at four years for entering cars.

It is proper to say, in this connection, that this question was not raised in the court below. When it arose during our consultation, we ordered a reargument at Pittsburgh and have received assistance from the able oral and printed arguments on both sides.

It is well established that the maxim of strict construction of penal statutes is not to be so applied as to exclude cases obviously intended to be included under the enactment, but, for the reasons indicated, we are of opinion that the legislature by the use of the words, "crime of ...... entering with intent to steal," in Section 1 of the Act of 1929, referred to and intended to include only offenses under Section 136 of our Penal Code, as amended.

Under the conclusion we have reached, appellant's convictions of breaking and entering a railroad car in the state of New York in 1915, and in this commonwealth in 1925, numbered paragraphs (2) and (4), as well as his conviction of the same offense in 1932, were not convictions of any of the crimes enumerated in the Act of 1929.

It follows that the judgment now appealed from must be vacated.

We agree with much that was said by the learned trial judge, in his opinion refusing a new trial, relative to the necessity for and purpose of "Habitual Criminal Acts." The evidence upon this record demonstrates that appellant has committed offense after offense and has no regard for the property rights of others; evidently, the infliction of ordinary punishment has had no reformatory effect upon him. It is our duty, however, to construe the law as we find it. Although we may deem a case to be within the reason of the statute, or the mischief it is designed to remedy, we may not place it under the provisions of the enactment, unless plainly authorized by its language.

.

The seventeenth assignment, charging error in imposing the sentence from which this appeal was taken, is sustained.

The sentence of imprisonment for life in the Western Penitentiary, imposed October 11, 1932, is vacated and the sentence of May 11, 1932, to the Allegheny County Workhouse, for an indefinite term of from two to four years, etc., is reinstated.