## Narcise, Appellant, *v.* Board of Trustees, Eastern State Penitentiary.

Argued September 25, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Herbert L. Maris,* for appellant.

*C. James Todaro,* Deputy Attorney General, with him *Claude T. Reno,* Attorney General, for appellees.

OPINION BY KELLER, P. J., November 15, 1939:

On March 2, 1933, Anthony Narcise, the appellant, was convicted of robbery and sentenced to a term of not less than five nor more than twenty years in the penitentiary. About a year and a half later he took part in a riot in prison and, on conviction, was sen-

tenced therefor by the Court of Quarter Sessions of Montgomery County to a term of not less than one nor more than two years, to be computed from the expiration of the sentence then being served by the appellant on the robbery charge. After serving more than the minimum of five years on his original sentence, the appellant, on March 8, 1939 applied to the Board of Trustees of the Eastern State Penitentiary for parole. The Board, relying on the opinion of the Attorney General, refused to consider the appellant's application, on the ground that he would not be eligible to apply for parole until he had served the twenty years maximum of his original sentence and the minimum of the second.

On March 28, 1939, on the petition of appellant, a writ of alternative mandamus issued from the Court of Common Pleas of Dauphin County, commanding the Board of Trustees of the Eastern State Penitentiary to give appellant immediate opportunity to apply for parole on his original sentence, or show cause why the same should not be done. The return on behalf of the Board admitted all of the facts and averred that it had no authority under the parole acts to consider this application. To this return, the petitioner demurred. The lower court, in an opinion filed by Fox, A. L. J., discharged the writ of alternative mandamus. The petitioner appealed to this court. Objection, if any, to the jurisdiction of the court was waived, under Act of May 5, 1899, P. L. 248, section 11.

The statute regulating parole in Pennsylvania is the Act of June 19, 1911, P. L. 1055, and its amendments. Section 8 of this act is as follows:

"Section 8. The Board of Inspectors [1] of each State penitentiary shall meet once each month at its respective penitentiary. At each meeting of the said boards, held as aforesaid, every prisoner confined in such penitentiary upon an indeterminate sentence, whose mini-

---

[1] Now, Board of Trustees: Act of June 7, 1923, P. L. 498.

mum term of sentence will expire within three months, shall be given an opportunity to appear before such board, and apply for his or her release on parole, as hereinafter provided."

The appellees insist, that, in spite of the plain wording of the section, appellant has forfeited his right to apply for a parole by committing a crime while serving his original sentence. In support of this contention, they cite section 10 of the above act, as finally amended by the Act of June 22, 1931, P. L. 862. The pertinent part of this section is as follows:

"Section 10. If any convict released on parole, as provided for in this act, shall, during the period of his or her parole or while delinquent on said parole, commit any crime punishable by imprisonment for which he or she is at any time thereafter convicted in any court of record and sentenced to any place of confinement other than the penitentiary from which he or she was released on parole, such convict shall, in addition to the penalty imposed for such crime committed during the said period, and after the expiration of the same, be compelled, by detainer and remand as for an escape, to serve . . . . . . the remainder of the term (without commutation) which said convict would have been compelled to serve but for the commutation authorizing said parole, . . . . . ."

The Attorney General's department has ruled, that this section applies to prisoners who commit a crime during imprisonment as well as to prisoners who commit a crime while on parole. The lower court adopted this view.

The judgment must be reversed. Section 8 is mandatory and all-inclusive. It provides that *every* prisoner confined on indeterminate sentence, *shall* be given an opportunity to *apply* for parole. It is difficult to see how the legislature could have used stronger language to express its intent. If it had stopped there, no one could claim that any prisoner whose minimum term was

to expire within three months could be prevented from *applying* for parole, no matter how bad a prisoner he might have been. The sole exception to this right is found in section 10, above quoted in part. Under it, it has been held that a parolee who has been recommitted for commission of a crime while on parole cannot thereafter apply for reparole on his original sentence: *Com. ex rel. Meinzer v. Smith,* 118 Pa. Superior Ct. 250, 253, 180 A. 179. However, if returned to prison for a mere violation of the rules of his parole, which is not a crime, he is eligible for reparole and the time spent on parole and before delinquency on it is credited on the maximum sentence, *Com. ex rel. Crimmins v. Smith,* 118 Pa. Superior Ct. 255, 180 A. 181. See also sections 1 and 2 of the Act of May 1, 1929, P. L. 1182, which supplant section 14 of the Parole Act of 1911, as amended by Act of June 3, 1915, P. L. 788.

Aside from parolees who are convicted of a crime committed while on parole, there are no prisoners serving an indeterminate term excluded from the operation of section 8, by the Act of 1911 or its amendments, and no others have been inferentially excluded under section 10. It is a cardinal rule that when a statute is free from ambiguity as enacted, there is no occasion for resorting to rules for statutory interpretation: *Farmers-Kissinger Market House Co. v. Reading,* 310 Pa. 493, 498, 165 A. 398; *Reitz v. Sinking Fund Commission,* 315 Pa. 87, 89, 172 A. 292; *Com. v. Woodward,* 110 Pa. Superior Ct. 478, 486, 168 A. 347. What appellees would have us do is first to read an ambiguity into the act and then resolve it against the prisoner. See *Urian v. Scranton Life Ins. Co.,* 310 Pa. 144, 151, 165 A. 21. As was said in *Com. v. West Phila. Fidelio Mannerchor,* 115 Pa. Superior Ct. 241, 175 A. 434, "The appellant asks us to supply an exception which would change the plain meaning of the act. In other words, the ambiguity is not in the act but only arises by rea-

son of the suggestion that a clause be supplied." To the same effect see *Grayson v. Aiman, Inc.,* 252 Pa. 461, 97 A. 695.

The appellees insist, however, that it is unconscionable to hold that the legislature intended to make any difference in treatment between one who commits a crime while still in prison and another who does so after being given his freedom on parole. Entirely aside from the fact that the words used clearly show its intention, such a distinction is consistent with the whole history of clemency toward prisoners in Pennsylvania. Since the adoption of the Constitution of 1790 (Art. II, sec 9), the Governor [2] has had power to grant pardons, and in 1844 it was decided in *Flavell's Case,* 8 W. & S. 197, that he could grant pardons with a binding condition subsequent, on breach of which the pardon would become null, and the original sentence be carried into effect. The Act of May 11, 1901, P. L. 166, in section 4 providing for the commutation of sentences, made it mandatory that the Governor add to all releases under the act, a condition that if the convict, after his release and before the expiration of his original sentence, should be convicted of any felony, he should serve the remainder of the commuted sentence in addition to any that might be imposed for such subsequent felony. This is very similar to a conditional pardon. The Act of May 10, 1909, P. L. 495 superseded the commutation act as to all prisoners sentenced to indeterminate sentences under it, but in changing from commutation to parole it retained in section 10, a provision very similar to section 4 of the 1901 act. In 1910, the Attorney General ruled (19 Dist. 810) that section 4 of the 1901 act did not apply to a prisoner who committed a felony while in prison, and that such prisoner was entitled to commutation on the original sentence. The legislature, with this ruling in force, then passed the parole

---

[2] Since the Constitution of 1873, only upon the recommendation of the Board of Pardons (Art. IV, sec. 9).

act of 1911, supra, which substantially reenacted the 1909 act, and in which section 10 was still quite similar to section 4 of the act of 1901. It is a logical assumption that it was thereby intended to continue under the parole acts the practice approved by the Attorney General under the commutation act.

The positions of a parolee and a prisoner are quite different. The parolee has been given, as an act of grace, a conditional opportunity to reenter society and rehabilitate himself. If he breaks faith with society by again committing crime he shows the trust in him to have been misplaced, and because of his breach of condition, he is required to serve the maximum term of his original imprisonment, without commutation. But a prisoner in jail has not been given any conditional privilege of re-entering society, and if while so confined he commits a crime, the sentence imposed for that additional crime is deemed adequate punishment for it. If, during his imprisonment, he violates the rules of the prison, his parole may be delayed or refused; if he commits a crime, his eventual release is, at the least, postponed by the sentence imposed for that crime. His case is very similar to that of a criminal who has committed two crimes before imprisonment and been sentenced for them to consecutive terms. Prior to the Act of June 25, 1937, P. L. 2093,[3] such a prisoner could apply for parole on the first sentence at the expiration of the minimum part of it: in fact, he was required to do so to avoid serving the maximum of his first sentence before beginning to serve the second: *Com. ex rel. Lynch v. Ashe,* 320 Pa. 341, 182 A. 229; *Com. ex rel. McGinnis*

---

[3] "Whenever, after the effective date of this act, two or more sentences to run consecutively are imposed by any court of this Commonwealth upon any person convicted of crime therein, there shall be deemed to be imposed upon such person a sentence the minimum of which shall be the total of the minimum limits of the several sentences so imposed, and the maximum of which shall be the total of the maximum limits of such sentences." Act of June 25, 1937, P. L. 2093.

*v. Ashe,* 330 Pa. 289, 199 A. 185; *Com. ex rel. Considine v. Ashe,* 134 Pa. Superior Ct. 29, 4 A. 2d 229.

It would be even more unconscionable, in our opinion, to hold that a prisoner serving a long term in the penitentiary, who, during the early period of his imprisonment, while unadjusted to his new surroundings and unresigned to his enforced restraint, commits another crime, should be barred of all hope of commutation or parole, no matter how much he might afterwards regret his ill considered action or how exemplary his subsequent conduct in prison might be, when the legislature has specifically provided that after serving his minimum term, he may be paroled, at the discretion of the Board of Trustees, except only where he has been convicted of a crime punishable by imprisonment, committed while out on parole.

The appellant does not contend that the Board must parole him. His contention is that he cannot be deprived, by the ruling of the Attorney General, of the right to apply for a parole and have it considered by the Board.

The contention that the Board *could not* find the appellant worthy of parole, if compelled to consider his case, is without merit. The statute (June 19, 1911, P. L. 1055, sec. 9, 61 PS 304) provides that if there is a reasonable probability that the prisoner will "live and remain at liberty without violating the law . . . . . ." the Board shall recommend parole. Of course, his criminal record is to be considered in deciding whether that probability exists, but it is only one of the factors and the determination of the question is for the sound discretion of the Board.

In his supplemental brief, the Attorney General refers us to the case of *Com. ex rel. Lewis v. Ashe,* 335 Pa. 575, 7 A. 2d 296, where the relator, who had been sentenced on April 15, 1926 to two *consecutive* terms of not less than five years nor more than ten years, each, escaped from the penitentiary on August 31, 1930 and

was not apprehended until January 8, 1932. In referring to the fact that had he remained in prison he would have been entitled to apply on April 15, 1931 for a parole from further service of his first sentence, the Supreme Court said: "and had such an application been made and favorably acted upon, he would then have begun serving his second sentence," citing *Com. ex rel. Lynch v. Ashe*, 320 Pa. 341, 182 A. 229. The court then continued: "Inasmuch as he escaped from the penitentiary on August 31, 1930, not being apprehended until January 9, 1932, it is quite obvious that even had he applied for a parole it would not have been granted." It is clear that the Supreme Court was referring to the obvious improbability and unlikelihood that the Board, in considering such an application, would grant a parole to one who only a few months before had escaped from prison, and was not intending to hold that the Board could not receive and consider the application, fruitless though it might be. Courts cannot compel a board clothed with discretionary powers to exercise its discretion in a particular way: *Horowitz v. Beamish*, 323 Pa. 273, 185 A. 760; *Reese v. Board of Mine Examiners*, 248 Pa. 617, 94 A. 246; *Runkle v. Com. ex rel. Keppelman*, 97 Pa. 328. On the other hand, administrative boards and public officials can be compelled by mandamus to perform duties clearly imposed on them by statute: *Com. ex rel. Kelley v. Pommer*, 330 Pa. 421, 199 A. 485, and the exhaustive list of cases on the subject there cited: *Com. ex rel. The Century Co. v. Phila.*, 176 Pa. 588, 35 A. 195; *Com. ex rel. Welsbach Co. v. Larkin*, 216 Pa. 128, 64 A. 908.

Judgment reversed and mandamus directed to be issued unless other and legal grounds be shown why it should not.[4]

---

[4] As to form of judgment, see *Com. ex rel. Century Co. v. Phila.*, 176 Pa. 588, 594, 35 A. 195; *Com. ex rel. Welsbach Co. v. Larkin*, 216 Pa. 128, 132, 64 A. 908.