## Spangler v. Fiss et al.

*Louis F. McCabe* and *Maxwell Pestcoe*, for plaintiff.

*William T. Connor*, for defendants Witkin, Clark, and Hennessey.

*H. J. Woodward*, Deputy Attorney General, and *James H. Duff*, Attorney General, for defendants Fiss and Morrison.

WOODSIDE, J., August 23, 1943.—This case comes before us on motion of the Speaker of the House of Representatives and the Secretary of the Commonwealth to dismiss the bill in equity in which they and the Board of Elections of Philadelphia are named as defendants.

Walter Spangler, as a citizen, taxpayer, and qualified elector of the City and County of Philadelphia, obtained a rule in this court against the said defendants to enjoin them from proceeding with the holding of special elections on September 14, 1943, to fill certain vacancies in the General Assembly, and requesting this court to set November 2, 1943, as the date for said elections.

The bill sets forth that at the present time there are three vacancies in the office of Representative in the General Assembly, two in the Fifth and one in the Eleventh Legislative Districts, both of which are lo-

cated in the City and County of Philadelphia; that the Speaker of the House of Representatives issued a writ of election to the County Board of Elections of Philadelphia to hold a special election for filling these vacancies on Tuesday, September 14, 1943, the day of the primary election; that there is "no compelling necessity for holding the special election in September 1943, to fill the vacancies"; that they "could be filled at a special election to be held at the time of the general election,[1] which is to be held November 2, 1943", and "that the Speaker clearly abused his discretion in fixing and directing that a special election be held on Tuesday, September 14, 1943, to fill said vacancies, thereby imposing upon the taxpayers of Philadelphia, including plaintiff, great and unnecessary expense which will run into about $25,000 [2] to hold said special election in September", and that "to hold a special election at the same time as the primary election creates an unnecessary duplication of work, and confusion among the qualified electors"; and that "the result of a special election when held concurrently with a primary election does not and will not reflect the choice of the majority of voters in the districts in which the vacancies are to be filled."

---

[1] The reference to the election in November 1943 as a "general" election was erroneous. It is a "municipal" election. Sections 2 and 3 of article VIII of the Constitution now provide that general elections shall be held biennially in each even-numbered year and municipal elections shall be held in each odd-numbered year. Section 2 did provide that "the general election shall be held annually . . ." until it was amended on November 2, 1909.

[2] Regardless of when the special elections are held they will necessitate expense. The bill merely alleges what the expense will be "to hold said Special Election in September". It does not allege how much more it would cost to hold the election in September than in November, which would be the issue if cost ever could become relevant to the case. It should be noted, as set forth subsequently in the opinion, that the county commissioners, who are in the best position to determine the accurate cost, say in their answer as the Board of Elections of Philadelphia that the cost will not exceed $6,500.

We are asked to direct the Speaker and the Secretary of the Commonwealth to countermand the writ of election and the proclamation issued and to direct that another writ of election and proclamation be issued to hold the special election on November 2, 1943, the date of the municipal election, and that the County Board of Elections of Philadelphia "be enjoined from proceeding with any preparations or expenses in connection with the special election".

The Board of Elections of Philadelphia County filed an answer to the bill admitting practically all the allegations of fact except the cost, which they alleged will not exceed $6,500.

The Speaker of the House and the Secretary of the Commonwealth filed a motion containing 20 reasons why we should dismiss the bill in equity. It was on the motion to dismiss that the argument was held, and we must, therefore, for the purpose of this opinion, accept as true the allegations of fact contained in the bill.

The real question is whether plaintiff's bill sets forth a good cause of action.

Article II, sec. 2, of the Constitution of Pennsylvania, provides: "Whenever a vacancy shall occur in either House, the presiding officer thereof shall issue a writ of election to fill such vacancy for the remainder of the term."

Section 628 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, as last amended by the Act of April 13, 1942, P. L. 20, 25 PS §2778, provides as follows:

"Whenever a vacancy shall occur in either house of the General Assembly whether or not it then be in session, the presiding officer of such house shall issue a writ of election to the proper county board or boards of election and to the Secretary of the Commonwealth, for a special election to fill said vacancy, which election shall be held on a date named in the writ, which shall be not less than thirty (30) days after the issu-

ance of said writ. The presiding officer may fix, in such writ of election, the date of the next ensuing primary, municipal or general election as the date for holding any such special election: Provided, however, That, should the Governor after the issuance of the said writ of election advise the presiding officer that the General Assembly will be called into extraordinary session prior to the date set for such special election, the presiding officer may countermand the writ theretofore issued and shall issue a new writ of election, fixing therein such earlier date therefor as is deemed expedient, but which shall not be less than thirty (30) days after the issuance of said writ."

Both the Constitution and the act of assembly impose a duty upon the Speaker of the House of Representatives, who is the presiding officer of that body, to issue a writ to fill the vacancies which exist. If the Speaker were to fail to perform this duty, there seems to be little doubt that the court would have authority to compel him to follow the mandate of the Constitution and the statutory law.

Public officials can be compelled by mandamus to perform duties clearly imposed on them by statute: Commonwealth ex rel. v. Pommer et al., 330 Pa. 421 (1938), and the exhaustive list of cases on the subject there cited; Commonwealth ex rel. v. Philadelphia et al., 176 Pa. 588 (1896); Commonwealth ex rel. v. Larkin, 216 Pa. 128 (1906); Narcise v. Eastern State Penitentiary, 137 Pa. Superior Ct. 394, 402 (1939). But the Speaker has performed this duty by issuing the writ.

The act not only contains a mandate to the Speaker to issue the writ, but it places in him the power to determine the date on which the election shall be held.

Subject to the limitations expressed in the statute the discretionary power to name in the writ the date on which the election shall be held is vested exclusively in the Speaker.

There is no allegation in the bill that the Speaker in issuing the writ violated either the Constitution or the law. The contention is that he "abused his discretion in fixing and directing that a special election be held on Tuesday, September 14, 1943".

The court has no authority to substitute its discretion for that of the presiding officer of the House of Representatives. The rule is well settled that "where a person or body is clothed with judicial, deliberative or discretionary powers, and he or it has exercised such powers according to his or its discretion, mandamus will not lie to compel a revision or modification of the decision resulting from the exercise of such discretion, though, in fact, the decision may have been wrong": Runkle v. Commonwealth ex rel., 97 Pa. 328, 332 (1881) ; Horowitz v. Beamish, 323 Pa. 273, 275 (1936). Although the above relates to a mandamus, the rule applies equally here.

Courts cannot compel an official clothed with discretionary powers to exercise his discretion in a particular way: Reese v. Board of Mine Examiners, 248 Pa. 617 (1915) ; Narcise v. Eastern State Penitentiary, supra.

Thus a presiding officer might be compelled to issue a writ and to set a date for the holding of an election, but the court cannot substitute its discretion for his in determining what date should be set.

In Dechert, etc., v. Commonwealth ex rel., 113 Pa. 229 (1886), the court said (p. 235) :

"It is well settled that mandamus will lie to compel the performance by public officers of duties purely ministerial in their character, but it is equally well settled that as to all acts and duties necessarily calling for the exercise of judgment and discretion on their part, mandamus will not lie . . . [The court] will in no manner interfere with the exercise of that discretion nor control or dictate the judgment, or decision which shall be reached." After quoting the above, Mr. Justice Linn in the recent case of Commonwealth ex rel. v. Pommer et al., supra, said (p. 439) : "The court

will not control discretion properly exercisable by the officer but it will require him to act in good faith in the circumstances."

Plaintiff has alleged no facts in his bill from which could be found any fraudulent or arbitrary disregard of duty on the part of the Speaker or any mistake in application of the law. See Horowitz v. Beamish, supra.

Not only does section 628 of the Election Code give the Speaker the discretion of setting the date on which the election shall be held, but it specifically states that he "*may* fix in such writ of election the date of the next ensuing primary . . ." as the date of the special election. The date set by the Speaker was the "next ensuing primary". He followed out the mandate of the law to issue the writ, he exercised the discretion given him by the law, and he exercised the discretion by setting the date on which the legislature specifically said he could set it.

Although it is not necessary for the court in this case to consider the reasons why, in the exercise of his discretion, the Speaker set the date of the special elections on the day of the primary election rather than on the date of the municipal election, nevertheless, we might note one very good reason for doing so. If November 2nd were set as the date to hold the special election and the Governor would then notify the Speaker between August 15th and October 1st of his intent to hold an extraordinary session of the legislature 30 days after the date of notification, either the districts where vacancies exist would lack representation in at least part of the session of the legislature, or it would be necessary to hold the special election on a date other than either the primary or municipal election days, at a cost many times that of holding it on September 14th.

Not only has plaintiff failed to cite any cases in Pennsylvania where the courts have substituted their discretion for that of an official who exercises discretion legally given him, but he has cited none from any other jurisdiction.

Counsel for plaintiff rely on the cases of Crawford v. Gilchrist, 64 Fla. 41, 59 So. 963, and Winget v. Holm, Secretary of State, 244 N. W. 331 (Minn., 1932. Even a cursory examination of the opinion in the Florida case shows that the court emphasized and reëmphasized that the writ there issued to the official involved a duty *"requiring no exercise of discretion"*.

The Minnesota case was concerned with whether amendments to their Constitution which were to be voted upon had been "proposed in the form demanded by the Constitution". The case had nothing to do with the discretionary power of an official. The court there claimed no more than the power to "coerce an official to perform a *ministerial* duty by means of the prerogative writs of mandamus and injunction". (Italics supplied.) The question before us is not the compliance with the Constitution or the law, but the exercise of discretion specifically given by the law.

It is clear that the *discretion* of determining the date of a special election for filling vacancies in the office of Representative in the General Assembly has been placed by statute in the hands of the presiding officer. The court cannot and should not substitute its discretion for that of the Speaker.

In the form of government which we are now fighting a war to preserve, there are three separate and independent branches. The powers of each branch extend to a limited degree into the field of the other two, and there are thus produced the checks and balances so necessary to our form of government. But care should be taken that in maintaining the proper checks and balances no branch should usurp the powers and prerogatives of either of the other two.

Without a powerful legislative branch of government there can be no democracy. In totalitarian powers the executive branch of the government is supreme. The judicial branch, although dominated by the executive, maintains a degree of power, and at least a semblance

of independence. It is the legislative branch whose independence and power has been entirely removed. Democracy can be maintained only by protecting the independence and power of the legislative branch of the government. Neither the executive nor the judicial should weaken its influence by usurping its powers.

The motion to dismiss contained among its reasons that plaintiff has been guilty of laches. We need not pass upon this, but it is not entirely without merit. Two of the writs were issued by the Speaker on May 7, 1943, and the third on June 23rd. The bill was filed in this case on July 31st. Argument was heard by the court at the earliest date that counsel indicated they were prepared for it, but by then ballots in most counties, and probably in Philadelphia, were being printed. A few days' delay can be of great importance in these cases and those seeking relief in court should act promptly.

And now, to wit, August 23, 1943, for the reasons set forth in the opinion, the bill is dismissed at the cost of plaintiff.