**Petition to Set Aside Special Election in Thirty-second Senatorial District**

*Anthony Cavalcante*, for petitioners.

*Samuel J. Feigus*, contra.

BANE, J., December 28, 1956.—This is a proceeding to contest the validity of an election under the provisions of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, 25 PS §3401-3409, for the office of senator in the General Assembly from the 32nd Senatorial District of Pennsylvania, comprising the County of Fayette, instituted by qualified electors of said district and held to fill a vacancy in said office occasioned by the resignation of the incumbent on December 31, 1955.

The contest petition alleges that Thomas J. Kalman was illegally returned as elected to the office of senator for the unexpired term of the resigned incumbent from that district in that: (a) The presiding officer of the senate of Pennsylvania passed over the next ensuing

primary of April 24, 1956, and fixed the general election of November 6, 1956, as the date for the holding of a special election to fill said vacancy; in that (b) the said Thomas J. Kalman was selected and nominated by the Democratic State Executive Committee as the Democratic Party candidate in said senatorial district for the special election to be held November 6, 1956, none of the members thereof voting in or being residents of Fayette County; in that (c) the Fayette County Board of Elections printed, delivered and mailed approximately 500 military ballots on or before October 24, 1956, to electors serving in actual military service, which ballots contained blank spaces only under the title "Special Election", "Senator in General Assembly", "For the Unexpired Term of Eustace H. Bane", "(32 District)", "Vote for One", which ballots were accompanied by a list of the then duly nominated candidates, viz., Thomas J. Kalman and Edward L. Sittler, Jr., and omitting the name of Anthony Cavalcante; and that (d) the Fayette County Board of Elections directed the preparation and arranging of the voting machines in Fayette County so that each duly nominated candidate for the office of senator in the General Assembly, including that of Anthony Cavalcante, was placed thereon on the party line of their respective nominating parties; all of which was so done and so calculated as to favor the election of Thomas J. Kalman, and to virtually deny to the said Anthony Cavalcante a fair opportunity to a free, equal and uniform election.

The court directed that the petition be filed, fixed a date for hearing, set bond in the sum of $500 and issued a rule upon respondent, Thomas J. Kalman, to answer.

Thereafter, respondent, Thomas J. Kalman, filed a motion to quash the petition and arguments were heard thereon.

After careful consideration we have reached the conclusion that the whole petition is so defective in substance that a sufficient cause of action is not stated therein.

It appears from the petition and the exhibits attached thereto that a vacancy occurred in the office of senator in the General Assembly of Pennsylvania, from the 32nd Senatorial District, comprising Fayette County, by reason of the resignation of the incumbent senator, effective midnight, December 31, 1955; in virtue of which Roy E. Furman, president of the senate, issued a writ of election on March 5, 1956, to the Fayette County Board of Elections commanding them to cause a special election to be held to fill said vacancy and fixed November 6, 1956, as the date for the holding of said special election, which date corresponds with the date of the general election of 1956; that in fixing the date of the regular general election, as aforesaid, the presiding officer of the senate passed over the date of the next ensuing primary of April 24, 1956.

It further appears that on August 29, 1956, the Democratic State Executive Committee caused the name of one Thomas J. Kalman to be certified as the candidate of the Democratic Party in said 32nd Senatorial District, none of the members of said Democratic State Executive Committee being residents or voting in Fayette County; Edward L. Sittler, Jr., being likewise certified by the Republican State Executive Committee as the Republican candidate for said office.

It also appears that on September 14, 1956, the Secretary of the Commonwealth duly certified to the Fayette County Board of Elections the official list of the names of all candidates duly nominated at the primary of April 24, 1956, and to be voted for at the regular general election of November 6, 1956, and that said list does not contain the name of any candidate for

the office of senator to be voted for in said special election, to be held on that date.

It likewise appears that on and prior to October 24, 1956, the Fayette County Board of Elections began the delivery or mailing of approximately 500 military ballots to electors in the actual military service from the 32nd Senatorial District, who had requested such ballots, that such ballots contained blank spaces under the title of the senatorial office, in which they might insert the name of the candidate of their choice and that accompanying said ballot was a letter informing the said electors that, as of the date of the mailing of this ballot, Thomas J. Kalman was the Democratic nominee for the office of senator, Edward L. Sittler, Jr., was the Republican nominee for the office of senator and omitting therefrom the name of Anthony Cavalcante.

It further appears that on October 16, 1956, Anthony Cavalcante filed with the Secretary of the Commonwealth nomination papers, in accordance with the laws of the Commonwealth applicable thereto, in virtue of which Anthony Cavalcante was duly nominated as the candidate of the "Non-Partisan Party" for the office of senator in the 32nd Senatorial District.

Further it appears that on October 25, 1956, the Secretary of the Commonwealth of Pennsylvania certified to the Fayette County Board of Elections the official list of names to be printed on the official ballot, to be voted for at the special election, which list included the names of Thomas J. Kalman, as the Democratic nominee, Edward L. Sittler, Jr., as the Republican nominee, and Anthony Cavalcante as the Non-Partisan nominee; that the official ballot placed upon the face of each voting machine was so prepared and arranged that all the candidates of each of said parties, including those of Thomas J. Kalman, Edward L. Sittler, Jr., and Anthony Cavalcante, appeared there-

on in the same row or column, following their respective party designations, so that each voter at the election held on November 6, 1956, voting a straight political party ticket, cast a vote not only for all the other duly nominated candidates of that party, but also for the nominee of that party for the office of senator in the General Assembly.

In this connection, it is to be noted that voting machines have been in use in this county in every election district since the primary of 1939, and prior thereto in our cities, boroughs and certain of our townships, as early as 1930.

The election of Tuesday, November 6, 1956, was duly held, and on November 23, 1956, the Fayette County Board of Elections certified to the Secretary of the Commonwealth the returns of the votes cast, from which it appears that Thomas J. Kalman received 34,538 votes, Edward L. Sittler, Jr., 26,627 votes and Anthony Cavalcante, 4,058 votes.

The instant action was instituted on November 26, 1956.

As to petitioner's complaint that the presiding officer of the senate passed over the primary election of April 24, 1956, and fixed November 6, 1956, as the date for the holding of said special election, the Election Code of Pennsylvania of June 3, 1937, P. L. 1333, 25 PS §2778, provides as follows:

"Whenever a vacancy shall occur in either house of the General Assembly whether or not it then be in session, the presiding officer of such house shall issue a writ of election to the proper county board or boards of election and to the Secretary of the Commonwealth, for a special election to fill said vacancy, which election shall be held on a date named in the writ, which shall be not less than thirty (30) days after the issuance of said writ. The presiding officer may fix, in such writ of election, the date of the next ensuing primary,

municipal or general election as the date for holding any such special election: Provided, however, That, should the Governor after the issuance of the said writ of election advise the presiding officer that the General Assembly will be called into extraordinary session prior to the date set for such special election, the presiding officer may countermand the writ theretofore issued and shall issue a new writ of election, fixing therein such earlier date therefor as is deemed expedient, but which shall not be less than thirty (30) days after the issuance of said writ."

Article II, sec. 2, of the Constitution of Pennsylvania provides: "Whenever a vacancy shall occur in either House, the presiding officer thereof shall issue a writ of election to fill such vacancy for the remainder of the term".

Both the Constitution, and the act of assembly impose a duty upon the president of the senate, who is the presiding officer of that body, to issue a writ to fill the vacancies which exist. If the presiding officer of the senate were to fail to perform that duty, there seems to be little doubt that the court would have authority to compel him to do so: Marcise v. Eastern State Penitentiary, 137 Pa. Superior Ct. 394, 402. But here the president of the Senate has performed this duty by issuing the writ.

The act not only contains a mandate to the president of the senate to issue the writ, but it places in him the power to determine the date on which the election shall be held.

Subject to the limitations expressed in the statute, the discretionary power to name in the writ the date on which the election shall be held is vested exclusively in the president of the senate.

There is no allegation in the contest petition that the president of the senate in issuing the writ violated either the Constitution or the law. The contention is,

substantively, that he abused his discretion in fixing and directing that a special election be held on Tuesday, November 6, 1956, for the purpose of obtaining the advantage of the straight party vote at the general election for the candidate of the Democratic Party. This averment on the part of petitioners is patently a conclusion, since no facts are stated with clearness and precision, which if sustained by proof would require the court to find that the presiding officer had failed to act in good faith in the circumstances.

This court has no authority to substitute its discretion for that of the presiding officer of the senate. The rule is well settled in this Commonwealth that "Where a person or body is clothed with judicial, deliberative or discretionary powers, and he or it has exercised such powers according to his or its discretion, the Court may not compel a revision or modification of the decision resulting from the exercise of such discretion, though in fact, the decision may have been wrong": Rumkle v. Commonwealth, ex rel. Keppleman, 97 Pa. 328, 332; Horowitz v. Beamish, 323 Pa. 273, 275. Courts cannot compel an official clothed with discretionary powers to exercise his discretion in a particular way: Reese v. Board of Mine Examiners, 248 Pa. 617.

Thus a presiding officer might be compelled to issue a writ and set a date for the holding of an election but the court cannot substitute its discretion for his in determining what date should be set: Spangler v. Tiss, 49 D. & C. 366.

Whatever merit there may be in the contention that the best interests of the public weal are served by having elections such as the one here involved held on the earliest available date, it nevertheless is apparent that the legislature has vested in the presiding officer of the senate broad discretionary powers in setting the date on which "special elections" shall be held. The

foregoing sections of the Election Code specially provide that he "may fix in such writ of election the date of the next ensuing primary, municipal or general election—" as the date of the special election. He followed out the mandate of the law in issuing the writ. He exercised his discretion in setting a date on which the legislature specifically said he could set it. Having done so, we are now without legal authority to substitute our discretion for his in determining what date should have been set.

It was asserted, in argument, that the presiding officer of the senate having fixed the date for holding the special election, as he did, deprived the 32nd Senatorial District of representation in the senate of Pennsylvania for almost a year. This assertion is without merit for the reason that had the special election been held on April 24, 1956, as it is contended it should have been, the newly elected senator would have represented this district in the 141st Regular Session of the Assembly from a date thereafter until the date of final adjournment thereof on May 22, 1956, or less than one month.

It is also noted that Anthony Cavalcante, who appears in this action, as counsel for petitioners, filed an action, as plaintiff, in the Court of Common Pleas of Dauphin County, against the presiding officer of the senate, as defendant, at no. 54, Commonwealth docket, 1956, wherein he raised the question here discussed, which action was determined adversely to him on July 2, 1956, and no appeal taken therefrom.

In the second contention of petitioners, it is charged that the Democratic State Executive Committee, none of whom are residents or vote in Fayette County, caused the selection and nomination of Thomas J. Kalman, to be made on August 29, 1956, as the candidate of the Democratic Party for the office of senator in the said special election, upon the advice, counsel

and recommendation of the presiding officer of the senate, who was a member thereof, by proxy, and that of William J. Graham, Democratic County Chairman of Fayette County; the purpose of which latter two was allegedly to prevent the free and equal selection of the said Anthony Cavalcante as such candidate.

The Election Code, 25 PS §2779, provides, inter alia:

"Candidates to fill vacancies in the offices . . . of Senator . . . in the General Assembly . . . shall be nominated by political parties, in accordance with the party rules relating to the filling of vacancies, by means of nomination certificates, in the form prescribed in section 630 of this Act; . . ."

Section 3 of the Act of May 23, 1949, P. L. 1656, 25 PS §2781, provides that nominating certificates which are accepted and filed shall be deemed valid, unless objections are duly made thereto in writing within three days next succeeding the last day for filing.

The first of the foregoing sections of the Election Code authorizes each political *party* to file a nomination certificate for candidates at a *special* election, and the second provides an available remedy should an offended party desire to attack the validity of the same.

Again we find that Anthony Cavalcante, who appears in this proceeding as counsel for petitioners, filed an action in the Court of Common Pleas of Dauphin County at no. 454, September term, 1956, no. 413, Commonwealth docket, 1956, raising the issue here asserted, which was adversely held against him in an order entered October 24, 1956, and from which order an appeal is presently pending in the Supreme Court of Pennsylvania.

In the opinion filed in that proceeding, Richards, J., said the following:

"While the certificate before us is not perfect, it substantially complies with the requirements of the

act. The testimony reveals that under the rules of the Democratic Party, the State Executive Committee has the power to make the nomination. The meeting of this committee was called, convened at Harrisburg, on a specific date; of the total membership of 36, 18 members were personally present and eight were represented by proxy. The twenty-six members, being a quorum, voted unanimously to nominate Thomas J. Kalman. The minutes so reveal. The certificate was duly executed by the chairman and secretary and filed with the Secretary of the Commonwealth. We feel that the certificate is in substantial compliance with the law and that, in view of the shortness of time, it is unnecessary to permit an amendment to make it more specific.

"Petitioner seems to feel that the candidate should affix the usual affidavit required by law to nominating petitions for a regular election. He further urges that the only ones who may lawfully choose the candidate must be electors of the election district in question. As we read the law, this is not required when the election is a special one and the nomination is made by a political party.

"It has likewise been contended that the construction we have given brings about an unconstitutional result. No authority has been adduced to support this proposition, nor do we feel that a legal provision long established should be lightly set aside. It is our conclusion that the sections in question are not unconstitutional and that the certificate of nomination was made in compliance with law."

In this contention, as in the preceding one, petitioners have failed to state with clearness and precision those facts which if sustained by proof, would require the court to set aside the result of the election. The allegations contained in the petition as to why the Democratic State Executive Committee chose to select and nominate Thomas J. Kalman as the Democratic

Party candidate are mere conclusions on the part of petitioners. Here we are concerned only with the question of whether that which was done was within the limitations prescribed by law. For the reasons contained in the opinion of Judge Richards, supra, we conclude that this contention is likewise without merit.

In considering the charges contained in the third contention of petitioners, relative to the mailing of military ballots prior to October 24, 1956, and in blank form, for the purpose of frustrating the free choice of the electors of the 32nd Senatorial District and to achieve the selection and election of Thomas J. Kalman, the Election Code, 25 PS §3146.3(*a*) and (*b*), provides as follows:

"(a)  Ballots for use by such military electors under the provisions of this act shall be prepared sufficiently in advance by the county boards of election and shall be distributed by such boards as hereinafter provided. Such ballots shall be marked 'Official Military Ballot' but shall not be numbered and shall otherwise be in substantially the form for ballots required by article ten of this act, which form shall be determined and prescribed by the Secretary of the Commonwealth.

"(b)  In cases where there is not time, in the opinion of the county boards of election, to print on said ballots, the names of the various candidates for district, county and local offices, the ballots shall contain blank spaces only under the titles of such offices in which electors may insert the names of the candidates for whom they desire to vote, and in such cases the county boards of election shall furnish to electors lists containing the names of all the candidates who have been regularly nominated under the provisions of this act, for the use of such electors in preparing their ballots": Act of June 3, 1937, P. L. 1333, art. XIII, sec. 1303, added March 6, 1951, P. L. 3, sec. 11.

The Election Code, 25 PS §3146.5(a), further provides:

"(a) The county boards of election shall at least twenty-five days prior to the election deliver or mail official military ballots to all electors whose names and addresses have been ascertained; as additional names and addresses of electors are ascertained, the board shall deliver or mail official military ballots to such additional electors within forty-eight hours after ascertaining their names and addresses."

In applying the foregoing provisions of the Election Code we cannot find that the Fayette County Board of Elections did other than that which was required of them within the limitations prescribed by law. From the record and law applicable thereto the Fayette County Board of Elections was under a duty to mail or deliver military ballots to all military personnel who had requested them at least 25 days prior to the date of the general election. This date would, by computation, fall on October 12, 1956. At this date only Thomas J. Kalman and Edward L. Sittler, Jr., had been nominated by their respective parties. Anthony Cavalcante, while asserting his intention to do so, had not yet filed his nomination papers with the Secretary of the Comwonwealth.

The Election Code, 25 PS §2779, outlines the procedure of nominating candidates by political parties and by political bodies and fixes the dates for the filing of such nomination certificates and nomination papers. It reads as follows:

"Candidates to fill vacancies in the offices of Representative in Congress, Senator and Representative in the General Assembly and member of the council or legislative body of any city, borough, town or township shall be nominated by political parties in accordance with the party rules relating to the filling of vacancies, by means of nomination certificates, in the form pre-

scribed in section 630 of this act, and by political bodies, by means of nomination papers, in accordance with the provisions of sections 951, 952 and 954 of this act. Said nomination certificates and nomination papers for the office of Representative in Congress shall be filed in the office of the Secretary of the Commonwealth not later than ten (10) days after the issuance of the writ of election, and said nomination certificates and nomination papers for the office of Senator and Representative in the General Assembly shall be filed in the office of the Secretary of the Commonwealth, and for the office of member of the council or legislative body of a city, borough, town or township, in the office of the County Board of Elections wherein such city, borough, town or township is situate, not later than the twentieth day before the day of the election": As amended April 13, 1942, ex. sess., P. L. 20, sec. 2; May 23, 1949, P. L. 1656, sec. 2.

Again by computation the last day upon which Anthony Cavalcante might have filed his nomination papers as a candidate in the special election was October 17, 1956. This he elected to do on October 16, 1956. When consideration is given to the statutory limitation within which objections might have been filed thereto, as well as the then pending action in the Dauphin County Court, determined on October 24, 1956, it is clear that the Secretary of the Commonwealth could not possibly have certified the duly nominated candidates in the special election of the Fayette County Board of Elections prior thereto. To assume that the Fayette County Board of Elections should have waited to print and mail the military ballots until after receipt of such certification, as contended by petitioners, would have reduced the possibility of our military personnel voting in the November 6, 1956, election, scattered as they are throughout the world, to a mere absurdity.

Lastly it need only be noted, that if there was any merit in petitioner's contention, in this respect, the invalidating of the entire military vote cast would in no wise alter the result of the election as to any one of the candidates in the special election.

Finally it is charged by petitioners that the action of the Fayette County Board of Elections in placing the names of the respective candidates in the special election upon the voting machine label in their respective party row and appropriate column, under a title label printed in smaller than usual type, and in not having arranged the election machines so that the office of senator would appear thereon "separate and apart from and independent of" the other offices being voted upon in said general election, constituted fraud, per se, upon the voter and did frustrate per se a free expression of choice for said Anthony Cavalcante.

The Election Code provides, inter alia:

"Every special election, held under the provisions of this article, shall be held and conducted *in all respects in accordance with the provisions of this act relating to November elections*, and the provisions of this act relating to November elections shall apply thereto in so far as applicable, and not inconsistent with any other provisions of this act. *All such special elections held at the time of a regular primary or November election shall be conducted by the election officers by the use of the same equipment and facilities, so far as practicable, as are used for such primary or November election*": Act of June 3, 1937, P. L. 1333, art. VI, sec. 637, 25 PS §2787. (Italics supplied)

The law requires that voting machines be so arranged that election equipment:

". . . (b) . . . shall permit each voter, at other than primary elections, to vote a straight political party ticket in one operation, and, in one operation, to vote

for all the candidates of one political party for presidential electors, and, *in one operation, to vote for all the candidates of one political party for every office to be voted for,* except those offices as to which he votes for individual candidates. . . .": Act of June 3, 1937, P. L. 1333, art. XI, sec. 1107, 25 PS §3007. (Italics supplied)

And, as to the form of ballot, as follows:

". . . (h) *The names of all candidates of a political party shall appear in the same row or column,* and no other names shall appear in the same row or column, to the left or top of which shall be a straight party lever, by means of which an elector may, *in one operation, vote for all the candidates of that political party for every office to be voted for.* . . .": Act of April 24, 1947, P. L. 63, sec. 1, as amended, 25 PS §3010. (Italics supplied)

And, as to the right to vote for any candidate appearing upon the ballot, as follows:

". . . (d) At primaries, he shall vote for each candidate individually by operating the key, handle, pointer or knob, upon or adjacent to which the name of such candidate is placed. At election, he may vote for each candidate individually by operating the key, handle, pointer or knob, upon or adjacent to which the names of candidates of his choice are placed, or he may vote a straight political party ticket in one operation by operating the straight political party lever of the political party or political body of his choice, if such machine has thereon a separate lever for all the candidates of the political body. He may also, after having operated the straight party lever, and before recording his vote, cancel the vote for any candidate of such political party or political body by replacing the individual key, handle, pointer or knob of such candidate, and may thereupon vote for a candidate of another

party, or political body for the same office by operating the key, handle, pointer or knob, upon or adjacent to which the name of such candidate appears. In the case of a question submitted to the vote of the electors, the elector shall operate the key, handle, pointer or knob corresponding to the answer to which he desires to give": 25 PS §3056(d).

That there is no legal merit in petitioner's contention in this regard is abundantly clear, from the foregoing provisions of the Election Code, as well as those relating to the form of the ballot, the right to vote a straight political ticket in one operation, and the alternative right that after having operated a straight party lever, and before recording his vote, a voter might cancel his vote for any candidate of such political party or political body, by replacing the individual key of such candidate and thereafter vote for a candidate of another party or political body for the same office, by operating the key upon or adjacent to which the name of such candidate appears.

Petitioner's contention that because this was a "special election," Anthony Cavalcante, as well as the other candidates therein, were entitled to have the ballot therefor segregated and set apart from all other offices being voted upon in the general election, by having such candidates placed upon adjacent or contiguous lines and with a separate independent key by which a vote could be cast for each must fall because the Election Code, as quoted, provides that every special election shall be held and conducted "in all respects in accordance with the provisions of the Act relating to November elections" by the use of the same equipment and facilities. It further directs that the voting machines and ballot labels thereon be so arranged as to permit each voter, at other than primary elections, to vote a straight political party ticket in one operation

"for all the candidates of one political party for every office to be voted for." It further directs that the voting machines shall meet and satisfy the requirement that after having operated the straight party lever, and before recording his vote, the voter may cancel his vote for any candidate of such political party or political body and thereupon vote for another candidate of another party or political body for the same office. This is the procedure the Fayette County Board of Elections was required to follow. Neither this court nor the Fayette County Board of Elections had any authority to direct otherwise.

If, in the circumstances here asserted, it might be considered more advisable to have candidates in a special election segregated and set apart, on separate lines on the voting machines, and with separate levers or keys to be used in voting for them, it is a matter for the consideration of the legislature and not a function of this court. The matter of elections as to form and procedure is purely statutory, and cannot be disposed of on any alleged theories of expediency or supposed good government.

From these provisions of the code, it is clear that any elector, voting in Fayette County on November 6, 1956, had the full privilege of voting for any candidate, including Anthony Cavalcante, whose name appeared on the face of the voting machine ballot, irrespective of that candidate's party affiliation or the position in which his name appeared thereon.

It is true that Anthony Cavalcante received only 4,058 votes of the total 65,223 votes cast for the senatorial office he sought, but to assert that the reason therefor was attributable to his position on the ballot, and the manner required to operate the voting machines to cast a ballot for him is to assume that the electorate of Fayette County was unable to read and

intelligently operate the voting machines. This assumption we are unwilling to accept in the face of almost two decades of use of the voting machines in every election district of this county.

While a court should not be captious in viewing petitions of the character of the one here involved yet a complaint of an undue or illegal election must be stated with clearness and precision, and petitioners held to the exercise of due diligence to ascertain and specify the facts, which if sustained by proof, would require the court to set aside the result of the election: Warren Borough Election, 274 Pa. 352; Morganroth Election Contest, 50 D. & C. 143. It is not sufficient to set forth in general terms, however positive, numerous allegations of fraud and conclusions arising from acts done and performed. It must set forth specifically the frauds perpetrated and the facts with precision, upon which petitioners rely, so that respondent may know what he is called upon to meet.

We are of the opinion that the original petition in this case is substantively and legally defective. It does not state a cause of action, in that no facts are alleged from which could be found any fraudulent or arbitrary disregard of duty or any mistake in the application of the law.

It must also be remembered that the prayer of petitioners is that we declare void the entire special election. In this connection it is established generally throughout American jurisdictions that one who does not utilize the opportunity afforded by statute to object to irregularities in the ballot before the election, may not afterwards raise objections thereto. It would be unjustifiable, and indeed intolerable, after the electorate has clearly expressed its will, for the court to declare an election null and void because of an inconsequential error, mistake or irregularity, especially

where, as here, the law furnishes to every elector a method whereby the necessary correction may be made prior to the election: Oncken v. Ewing, 336 Pa. 43.

The power to throw out a ballot, like the power to throw out the entire poll of an election district, for irregularities, must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling reasons: James Appeal, 377 Pa. 405.

The invalidation of a public election is a judicial act of the most serious import, and is justified only by circumstances of the most compelling nature. Where, as here, the alleged irregularities could not reasonably have misled the voters and did not result in the presentation to them of the candidates in an unintelligible manner, the election cannot be judically overturned, because petitioners complain that a purported advantage fell to the lot of another, rather than to the candidate of their choice.

### Order

And now, December 28, 1956, for the reasons set forth in the opinion, the motion of respondent to quash is sustained, and the petition and proceedings herein are quashed. The petition is hereby dismissed at the cost of petitioners.

### Memorandum Opinion on Procedural Dissent

MORROW, J., December 28, 1956. — A petition in writing of more than 20 registered electors of the Thirty-second Senatorial District of this State, complaining for the reasons therein stated that the special election November 6, 1956, to fill the vacancy in the office of State senator is illegal, was presented in open court on Monday, November 26, 1956, at 10

a.m., when all the members of this court were on the bench. The petition was thereupon read at length. It was ordered filed. This action of the court had the effect of adjudging that the petition set out a prima facie case. Section 1758, art. XVII, of the Act of June 3, 1937, P. L. 1333, 25 PS §3458, provides: "The petition shall be presented to the court or law judge having jurisdiction, except where otherwise provided in this article, and if it shall set out a prima facie case, it shall be filed of record in the proper court, and thereupon a time shall be fixed for hearing." Bond was filed by petitioners as required and the time for a hearing was fixed. Prior to the time fixed respondent by his counsel filed a motion to quash the petition. The allegations of fact in the petition must be accepted as true in acting upon this motion. The majority of this court have sustained the motion to quash. I favored going on with the hearing as scheduled. The petition contains many allegations of fact. Taking these as true, together with all the inferences therefrom reasonably warranted, it seems to me that the hearing scheduled should have been held rather than that the proceedings be quashed forthwith. On the motion to quash no matter of fact advanced by way of defense and no litigation elsewhere can properly be considered. As I view it, whether the special election required by Constitution and statute should have been kept separate and apart as mentioned in Munce v. O'Hara, 340 Pa. 209, and Howland v. Board of Supervisors of San Joaquin County, 109 Cal. 152, 41 Pac. 864, and other cases, and not merged into the general election as allegedly was done for the reasons and in the manner averred in the petition, is a question to be determined after full hearing as prescribed by the Election Code rather than decided upon the motion to quash.